OLD COLONY COUNCIL - BOY SCOUTS OF AMERICA *vs.*
ZONING BOARD OF APPEALS OF PLYMOUTH.

No. 89-P-1325.

Plymouth. March 14, 1991. - July 12, 1991.

Present: BROWN, DREBEN, & IRELAND, JJ.

*Permit. Zoning*, Special permit, Material removal, Wetlands. *Plymouth.
Words*, "Incidental."

The excavation and removal of 460,000 cubic yards of fill from a certain
    site was not "incidental" to the construction and maintenance of a
    cranberry bog, an approved use of the site, with the result that a special
    permit was required under the terms of the applicable municipal zoning
    by-law for the removal of the fill. [47-49]
A Superior Court judge correctly upheld a zoning board's denial of a spe-
    cial permit for the excavation and removal of fill, where he determined
    that the board was warranted in finding that the removal of 460,000
    cubic yards of fill was not "incidental" to the allowed use of the site so
    as to be excepted from zoning and aquifer protection requirements and
    in finding that adequate and appropriate facilities were not available
    for the proposed removal operation. [49-50]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 29, 1988.

The case was heard by *James J. Nixon*, J.

*John H. Wyman* for the plaintiff.

*Jane M. O'Malley* for the defendant.

DREBEN, J. Old Colony Council - Boy Scouts of America
(plaintiff) is a charitable organization which owns and oper-
ates a summer camp for Boy Scouts in Plymouth. To become
more self-sufficient and lessen its reliance on external funds,
it sought to create a new cranberry bog adjacent to an ex-
isting nonproductive bog on a portion of its campsite. The
cost of constructing the bog would, under the plaintiff's plan,
be paid for by the sale of excavated material to the site con-

tractor, who would construct the bog and would pay the plaintiff in addition approximately $200,000.

The site chosen requires reducing the elevation of a hill (from 106 feet to fifty-three feet in one area) and the removal by truck of 460,000 cubic yards of earth. Removing this quantity of earth will entail thirty truck trips per day on a narrow gravel road, five days a week, for two and a half years.

When the plaintiff applied for a zoning permit,[1] the town's zoning agent refused to issue one on the ground that a special permit was required under § 301.06 of the zoning by-law. The plaintiff petitioned the zoning board of appeals (board) to reverse the decision of the zoning agent or, in the alternative, to grant a special permit for the proposed excavation. After the board denied both requests, the plaintiff unsuccessfully sought relief in the Superior Court pursuant to G. L. c. 40A, § 17. It now appeals from the judgment of the Superior Court. We affirm.

1. *Zoning permit.* The plaintiff first claims that a special permit is not needed and that a zoning permit should be issued because its proposal falls within the exception provided in § 301.06 of the by-law. That section is part of the "Natural Features Conservation Requirements" of the by-law, the intent of which, as expressed in § 301.01, "is to prevent cumulative damage to landscape and topography and related valuable and non-renewable natural resources of the Town of Plymouth." Even for allowable uses a zoning permit is required so that, as stated in § 301.02, the building inspector "shall review applications for conformity with this section," that is, as few lasting changes in topography as possible are to be made.

Section 301.06, upon which the plaintiff relies, provides:

"Except when incidental to and reasonably required in connection with the construction of an approved

---

[1] A zoning permit is required for all excavations in excess of ten cubic yards to ensure that there is compliance with the "Natural Features Conservation Requirements," § 301 of the Plymouth zoning by-law.

> use . . . no removal for sale, trade or other considera-
> tion, or for use on a separate site, of soil, sand, gravel,
> or quarried stone in excess of ten (10) cubic yards shall
> be allowed except by special permit. . . . Such special
> permit for excavation shall be subject to all applicable
> Environmental Design Conditions . . . and . . . the
> Board of Appeals may prescribe additional conditions
> and safeguards . . . ."

The plaintiff's argument is that a special permit is necessary
only when the sole purpose is earth removal; where a use is
permitted as of right, no special permit is needed for the ex-
cavation necessary to prepare a site for that permitted use,
regardless of the quantity of the earth materials to be re-
moved. Therefore, according to the plaintiff, since the crea-
tion and cultivation of cranberry bogs are permitted as of
right, the court erred in upholding the board's denial of the
zoning permit.

The purpose of § 301 and the language used in § 301.06,
when read in the light of that aim, support the reading
adopted by the board and the judge. Whether there is "dam-
age to the landscape and topography" surely does not depend
on intent, but rather on what happens on the ground. Demo-
lition of a hill does or does not damage the landscape irre-
spective of the demolisher's purpose.

Section 301.6 uses the word "incidental," a term which,
when used in the context of zoning, often incorporates the
concept "that the use must not be the primary use of the
property but rather one which is subordinate and minor in
significance." *Harvard* v. *Maxant*, 360 Mass. 432, 438
(1971), quoting from *Lawrence* v. *Zoning Bd. of Appeals of
North Branford*, 158 Conn. 509, 512 (1969). The ordinary
lexical meaning of "incidental" also connotes something mi-
nor or of lesser importance.[2] According this meaning to the

---

[2]In Webster's Third New International Dictionary 1142 (1971), the first
definition given of "incidental" is "subordinate, nonessential, or attendant
in position or significance." In the American Heritage Dictionary 664
(1976), "incidental" is defined as "[o]ccurring as a fortuitous or minor
concomitant: incidental expenses."

word "incidental," in our view, best achieves the purpose of the special section of the by-law of which § 301.06 is a part.

That the excavation was not minor or incidental follows from the findings of the judge: "The net effect of the plaintiff's undertaking . . . is the creation of a sand and gravel quarry in conjunction with creating a cranberry bog." Where, as here, the proposal involved the removal of 460,000 cubic yards of fill over a two and a half year period and an excavation which would provide substantial funds in excess of the cost of constructing the bog, the judge was warranted in upholding the board's conclusion that the excavation of material was not incidental to the construction and maintenance of a cranberry bog.

2. *Special permit.* "Under . . . G. L. c. 40A, § 17, a court reviewing a decision of the board denying a permit does not possess the same discretionary power as does the board, and the decision of the board can only be disturbed 'if it is based "on a legally untenable ground" . . . or is "unreasonable, whimsical, capricious or arbitrary". . . . To hold that a decision . . . denying a permit is arbitrary . . . whenever the board, on the facts found by the trial judge, could have granted a permit, would eliminate the board's intended discretion.' *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277-278 (1969)." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486-487 (1979).

The judge was correct in upholding the board's denial of the special permit under § 301.06. The campsite was subject both to the zoning requirements of a "Rural Residential District" and the more stringent requirements of an "Aquifer Protection District." In the latter, § 401.17(F)(1)(j) prohibits: "The mining of land except as incidental to a permitted use; such as cultivation of cranberries." Allowed are uses which are permitted in "Wetlands Areas," "including uses incidental thereto such as the excavation and use of materials in connection with the creation and maintenance of agricultural uses, such as cranberry bogs." Zoning by-law of Plymouth § 401.17 (D)(1).

Not only was the board warranted in determining that the removal of the material was not "incidental" to the creation of an allowed use, but it also had good reason to decide that adequate and appropriate facilities were not available for the proposed operation.[3] As the judge found, the road to be used was a narrow gravel road, the trucks to be employed were heavy and wide and, in some places, would not be able to pass each other. The board's refusal of a special permit for earth removal was not arbitrary or whimsical.

*Judgment affirmed.*

---

[3]The board also urges that § 407.17 (D)(1) means that the "excavation and use" must both be on the property. Since we hold that the board was justified in concluding that the excavation was not "incidental," we need not reach this issue. We also need not reach other issues, including whether a special permit procedure exists in an "Aquifer Protection District."