KATHLEEN B. HENRY *vs.* BOARD OF APPEALS OF
DUNSTABLE.

Middlesex. September 9, 1994. - November 16, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Zoning,* Agriculture, Material removal. *Words,* "Agriculture," "Horticul-
ture," "Incidental."

The proposed excavation and removal of 300,000 to 400,000 cubic yards of
gravel from a five-acre portion of a thirty-nine acre parcel classified as
forest land, in order to make that area suitable for planting and cultiva-
tion of Christmas trees, was not a primarily agricultural or horticul-
tural use of the land exempt under G. L. c. 40A, § 3, from zoning
regulation, nor was it incidental to such use, and thus it was subject to
the local zoning by-law prohibiting commercial earth removal. [843-
847]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 25, 1987.

The case was heard by *Robert H. Bohn, Jr.,* J., on a state-
ment of agreed facts.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Richard W. Larkin,* Town Counsel, for the defendant.

*Robert J. Sherer (Francis A. DiLuna* with him) for the
plaintiff.

*Tara Zedeh,* Special Assistant Attorney General, for De-
partment of Food and Agriculture, amicus curiae, submitted
a brief.

ABRAMS, J. We granted the defendant board's application
for further appellate review to consider its claim that the ex-
cavation and removal of 300,000 to 400,000 cubic yards of
gravel from a hilly five-acre portion of the plaintiff's thirty-
nine acre plot is not incidental to an agricultural or horticul-

tural use of the land and therefore is subject to the local zoning by-law prohibiting commercial earth removal. See generally § 15 of the zoning by-law of the town of Dunstable.

The plaintiff's property is in an R-1 residential district within the town of Dunstable. In an R-1 district an owner may remove or transfer earth within the property boundaries. However, Dunstable's zoning by-law prohibits commercial earth removal in an R-1 district as of right. The plaintiff applied to the Dunstable board of selectmen (selectmen) for a special permit. The selectmen denied the plaintiff's application.

The board denied the permit on the ground that the removal operation would be "injurious, noxious or offensive to the neighborhood" within the meaning of the applicable by-law. The plaintiff appealed to the Superior Court on the parties' stipulation of facts. A Superior Court judge determined that the proposed use was exempt from regulation by the Dunstable zoning by-law, under G. L. c. 40A, § 3 (1992 ed.),[1] as incidental to an agricultural use, and that the plaintiff could proceed with the earth removal operation. The Appeals Court affirmed. *Henry* v. *Board of Appeals of Dunstable*, 36 Mass. App. Ct. 54 (1994). We allowed the board's application for further appellate review. We reverse the judgment of the Superior Court.

I. *Facts*. We summarize the following from the parties' stipulation of facts. Kathleen B. Henry owns thirty-nine acres of land on High Street in Dunstable, a rural area classified as an R-1 residential district. The plaintiff's plot is forest land within the meaning of G. L. c. 61 (1992 ed.), and has been under a G. L. c. 61 forestry management plan for over ten years.

For the past several years, the plaintiff has used a portion of this property to cultivate 1,000 trees to restore the forest and to begin a Christmas tree farm. After consulting experts,

---

[1] General Laws c. 40A, § 3 (1992 ed.), reads in pertinent part: "No zoning ordinance or by-law shall . . . unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture [or] horticulture . . . ."

the plaintiff realized that a "cut your own" Christmas tree farm would be much more profitable than a saw log operation. During winter, neither mechanized farming equipment nor customers of a "cut your own" operation would be able safely to have access to the proposed five-acre area unless the steep grade of the land, created by an esker, is leveled by removing 300,000 to 400,000 cubic yards of gravel.

To realize her contemplated "cut your own" tree farm, the plaintiff planned to hire a contractor to remove 100,000 cubic yards of gravel annually until the necessary gravel was removed (at least three to four years). The contractor would sell the gravel at the market rate, currently one dollar per cubic yard, and share any profits with the plaintiff, which she planned to invest in startup costs of the "cut your own" operation. Eight years after completion of the excavation and planting, a sustainable annual crop of 700 to 1,000 Christmas trees is expected, which currently would sell for thirty dollars a tree.

II. *Incidental use.* Because § 3 of the Zoning Act, G. L. c. 40A (1992 ed.), does not define "agriculture" or "horticulture," we look to the plain meaning of those terms in deciding whether the plaintiff's activity is agricultural. See, e.g., *Building Inspector of Peabody* v. *Northeast Nursery, Inc., ante* 401, 405 (1994). The planting of evergreen trees for either a saw cut operation or a "cut your own" Christmas tree farm is within the commonly understood meaning of agriculture or horticulture. The board does not contend otherwise.

The board asserts that the plaintiff's proposed earth removal does not qualify for the exemption because it is a major independent commercial quarrying project, separate and apart from any agricultural or horticultural use. Two statutory provisions supply guidance in interpreting whether the scope of the agricultural use exemption for a proposed evergreen farm includes an initial, large-scale excavation project. First, G. L. c. 128, § 1A (1992 ed.), defines "agriculture" and "farming" to include practices by a farmer on a farm incident to or in conjunction with the growing and harvesting

of forest products.[2] Second, G. L. c. 61A, § 2 (1992 ed.), defines "horticultural use" to include uses "primarily and directly" related to or "incidental," and "customary and necessary" to commercial raising of nursery or greenhouse products and ornamental plants and shrubs.[3] Thus, the scope of the agricultural or horticultural use exemption encompasses related activities. Because the proposed excavation of 300,000 to 400,00 cubic yards of gravel is not primarily agricultural or horticultural, the issue is whether the proposed excavation is incidental to the creation of a "cut your own" Christmas tree farm.

Uses which are "incidental" to a permissible activity on zoned property are permitted as long as the incidental use does not undercut the plain intent of the zoning by-law. 2 E.C. Yokley, Zoning Law and Practice § 8-1 (4th ed. 1978). An accessory or "incidental" use is permitted as "necessary, expected or convenient in conjunction with the principal use of the land." 6 P.J. Rohan, Zoning and Land Use Controls § 40A.01, at 40 A-3 (1994). Determining whether an activity is an "incidental" use is a fact-dependent inquiry, which both compares the net effect of the incidental use to that of the primary use and evaluates the reasonableness of the relationship between the incidental and the permissible primary uses. In analyzing the plaintiff's proposed earth re-

---

[2]Section 1A provides in part: " 'Agriculture' and 'farming' shall include . . . the growing and harvesting of forest products upon forest land . . ., and any practices, including any forestry or lumbering operations, performed by a farmer, who is hereby defined as one engaged in agriculture or farming as herein defined, or on a farm as an incident to or in conjunction with such farming operations . . . ."

[3]Section 2 provides: "Land shall be deemed to be in horticultural use when primarily and directly used in raising . . . nursery or greenhouse products, and ornamental plants and shrubs for the purpose of selling such products in the regular course of business or when primarily and directly used in raising forest products under a program certified by the state forester to be a planned program to improve the quantity and quality of a continuous crop for the purpose of selling such products in the regular course of business; or when primarily and directly used in a related manner which is incidental thereto and represents a customary and necessary use in raising such products and preparing them for market."

moval project, the focus is on the "activity itself and not . . . such external considerations as the property owner's intent or other business activities." *County of Kendall* v. *Aurora Nat'l Bank Trust No. 1107*, 170 Ill. App. 3d 212, 218 (1988).

The word "incidental" in zoning by-laws or ordinances incorporates two concepts: "It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. . . . But 'incidental,' when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of 'incidental' would be to permit any use which is not primary, no matter how unrelated it is to the primary use." *Harvard* v. *Maxant*, 360 Mass. 432, 438 (1971), quoting *Lawrence* v. *Zoning Bd. of Appeals of N. Branford*, 158 Conn. 509, 512-513 (1969).

The plaintiff's activity meets neither aspect of an incidental use. The proposed gravel removal project is a major undertaking lasting three or four years prior to the establishment of the Christmas tree farm. That project cannot be said to be minor relative to a proposed agricultural use nor is it minor in relation to the present operation. Nor can the quarrying activity be said to bear a reasonable relationship to agricultural use. *Jackson* v. *Building Inspector of Brockton*, 351 Mass. 472 (1966) (construction of new building to operate agricultural machine on farm in residential district was reasonably related to farming activities and thus permitted under zoning ordinance). We conclude that the net effect of the volume of earth to be removed, the duration of the project, and the scope of the removal project are inconsistent with the character of the existing and intended agricultural uses.

We think that the plaintiff's case is governed by *Old Colony Council-Boy Scouts of Am.* v. *Zoning Bd. of Appeals of Plymouth*, 31 Mass. App. Ct. 46 (1991). In *Old Colony Council*, the Boy Scouts of America applied for a permit under a Plymouth zoning by-law to excavate 460,000 cubic

yards of earth in order to create a cranberry bog near a campsite in a "Rural Residential District." *Id.* at 49. The Plymouth zoning board of appeals denied the application on the ground that a special permit was required for such an excavation project. The plaintiff appealed to the Superior Court which affirmed the denial of the permit. The Appeals Court also affirmed on the ground that, considering the volume of earth to be excavated, the duration of the project, and the funds involved, the excavation was not incidental to the proposed cranberry bog. *Id.* (because "the proposal involved the removal of 460,000 cubic yards of fill over a two and a half year period and an excavation which would provide substantial funds in excess of the cost of constructing the bog, the judge was warranted in upholding the board's conclusion that the excavation of material was not incidental to the construction and maintenance of a cranberry bog").

In its reasoning, the Appeals Court stated the plain meaning of "incidental" to be "something minor or of lesser importance." *Id.* at 48 & n.2, quoting Webster's Third New Int'l Dictionary 1142 (1971) ("subordinate, nonessential, or attendant in position or significance") and American Heritage Dictionary 664 (1976) ("[o]ccurring as a fortuitous or minor concomitant: incidental expenses"). Applying this definition of "incidental" use, the court then considered the net effect of the proposed activity on the surrounding area.

In our view, the Appeals Court in *Old Colony Council, supra,* correctly considered the "net effect" that the proposed cranberry bog would have had in the rural residential area and concluded that the effect was so great that the excavation could not be said to be incidental (or attendant or minor) to the cranberry bog. *Id.* at 49 (given amount of gravel to be excavated, estimated duration of excavation of project, and profit to be made from the excavation, excavation was not incidental to proposed cranberry bog). Interpreting accessory use provisions to require both that an incidental use be minor relative to the principal use and that the incidental use have a reasonable relationship to the primary one is essential to preserve the power and intent of local zoning au-

thorities. Any other construction of the statute would under-
mine local zoning by-laws or ordinances. Applying the same
reasoning to this case, considering the amount of gravel to be
removed, the duration of the excavation and the monies to be
realized from the excavation, the removal of gravel cannot be
said to be minor or dependent on the agricultural use.[4]

The magnitude of the plaintiff's mining operation, if per-
mitted, would be "a de facto quarry operation to be carried
on in violation of the [Dunstable] zoning [by-law]." *County
of Kendall* v. *Aurora Nat'l Bank Trust No. 1107, supra* at
219. We conclude the special permit was properly denied be-
cause, "[t]o hold otherwise would be to allow the statutory
exemption to be manipulated and twisted into a protection
for virtually any use of the land as long as some agricultural
activity was maintained on the property. The [town's] zoning
power would thus be rendered meaningless. The Legislature
cannot have intended such a result when it created a pro-
tected status for agricultural purposes." *Id.*

This matter is remanded to the Superior Court for entry of
a judgment affirming the board's denial of a permit.

*So ordered.*

---

[4]The Appeals Court cited, 36 Mass. App. Ct. 54, 58 (1994), out-of-
State cases in support of its conclusion. See, e.g., *Atwater Township
Trustees* v. *Demczyk*, 72 Ohio App. 3d 763 (1991) (excavation to create
lake and track for horses on fifteen year old horse farm held incidental to
agricultural activity); *VanGundy* v. *Lyon County Zoning Bd.*, 237 Kan.
177 (1985) (quarrying rock to construct pond for irrigation was incidental
to primary agricultural activities). However, in each of the cited cases, the
net effect of the "incidental" use was minor in comparison to the primary
use, especially because the agricultural use predated the excavation. Fur-
thermore, to the extent that those cases are inconsistent with the result we
reach, we decline to follow them.