GERALD B. GALLAGHER & another[1] *vs.* BOARD OF APPEALS OF ACTON & others.[2]
No. 97-P-1145. December 18, 1997. *Zoning,* Lodging house, Building permit. *Words,* "Accessory use," "Incidental use."

Gerald B. Gallagher applied to the building commissioner of Acton for a permit to erect a structure containing four dwelling units (each consisting of a living room, a bedroom, and a bathroom) onto an existing single-family residence. Plans for the new addition also showed a kitchen and laundry to be used in common by the inhabitants of the four dwelling units. A judge of the Superior Court correctly ruled that the proposal was not an *accessory use*, and that the board of appeals of Acton had acted within its authority when, for that reason, it had affirmed the building commissioner's refusal to issue the permit Gallagher had requested. Gallagher and David H. Sheppard, whose role will shortly emerge, had sought judicial review under G. L. c. 40A, § 17, of the decision of the board of appeals.

1. *Facts.* Gallagher owns adjoining lots (they share a common rear lot line), both in the "R-2" single-family residential zoning district. He lives in the house at 57 Conant Street, a building in which he also accommodates four boarders. The property in question, 9 Main Street, is a small, one-story house with 960 square feet of finished space. Sheppard occupies 9 Main Street as Gallagher's tenant. Gallagher's proposal for 9 Main Street was to add to the existing house a two-story addition, with connecting passage only at basement level, containing the four boarding suites, kitchen and laundry, mentioned in the preceding paragraph. The addition was to have approximately 2,688 square feet of floor space, i.e., approaching three times as much as the original

---

[1]David H. Sheppard.

[2]The building commissioner of Acton and the town of Acton.

structure. The provisions of the Acton zoning by-law on which Gallagher relies are § 3.8.1 and § 3.8.1.3, which permit as an accessory use in the residential districts, "The renting of rooms or boarding for not more than four persons . . . . In either case, the service shall be operated by a resident of the premises." So as to satisfy the requirement of a resident-operator, Gallagher designated Sheppard as the resident manager of 9 Main Street.[3]

2. *Nature of an accessory use.* Gallagher's position is that the Acton code by definition makes renting to not more than four boarders a use accessory to a single-family residence. That too mechanical application of the by-law ignores a long line of decisional law that describes an accessory use as both subsidiary to the primary use of the locus and related to that primary use. *Needham* v. *Winslow Nurseries, Inc.*, 330 Mass. 95, 101 (1953). *Building Inspector of Falmouth* v. *Gingrass*, 338 Mass. 274, 275 (1959). *Parrish* v. *Board of Appeal of Sharon*, 351 Mass. 561, 567 (1967). *Hume* v. *Building Inspector of Westford*, 355 Mass. 179, 182 (1969). *Harvard* v. *Maxant*, 360 Mass. 432, 438 (1971). *Foxborough* v. *Bay State Harness Horse Racing & Breeding Assn., Inc.*, 5 Mass. App. Ct. 613, 618 (1977). *Albee Indus., Inc.* v. *Inspector of Bldgs. of Waltham*, 10 Mass. App. Ct. 858 (1980). In many of the cases, the terms "accessory use" and "incidental use" are used interchangeably, although "accessory" imports rather more the sense of adjunct while "incidental" imports rather more the sense of subsidiary. The relatively recent *Henry* v. *Board of Appeals of Dunstable*, 418 Mass. 841 (1994), illustrates the affinity of the words "incidental" and "accessory" in connection with zoning questions. In that case, the question was not one of interpreting what was an accessory use in the framework of a zoning code provision dealing with accessory uses. Rather, the court was obliged to consider whether earth removal was incidental to agricultural use. *Id.* at 843-845. The court decided it was not and in so doing wrote about how the word "incidental" helps to define the term "accessory use." *Id.* at 845. Each of the discussions in *Henry* v. *Board of Appeals of Dunstable* and in *Harvard* v. *Maxant, supra,* referred to *Lawrence* v. *Zoning Bd. of Appeals of N. Branford*, 158 Conn. 509, 512-513 (1969), an opinion in which the court spoke to the idea that an accessory use must be subordinate and minor in significance, rather than primary in purpose. *Id.* at 512. The accessory use must also have a reasonable relationship to the primary use. It is not quite enough that the accessory use be subordinate, "it must also be attendant or concomitant." *Ibid.* See also Bombrowski, Handbook of Massachusetts Land Use and Planning Law § 12.1 (1993).

3. *Application of "accessory use" to facts.* What Gallagher proposes is neither subordinate to the primary purpose nor attendant upon it. The primary purpose of 9 Main Street is a single-family residence of modest size. The proposed addition is so much bigger (as noted, almost three times as big) than the existing house that it cannot be described as subordinate and minor in relation to the allowed primary use. Nor is the boarding use planned attendant on the primary use. While renting to a boarder may be concomitant to use of a large single-family residence with a few spare rooms, a much larger boarding house use, with its own kitchen and its own laundry room, is not concomitant to single-family occupancy of a 960 square foot house. The absence of con-

---

[3]The defendants' original opposition to the proposal was grounded on an interpretation that the by-law, in providing for opposition "by a resident of the premises," required owner occupation. That argument was abandoned below.

nection of the proposed large structure with the existing smaller is dramatized by the absence of any access from one part of the building to the other, except at basement level.

Other arguments of the plaintiffs are without merit.

*Judgment affirmed.*

*Gerald B. Gallagher* for the plaintiffs.

*Acheson H. Callaghan, Jr.,* for the defendants.