EDWIN MASELBAS vs. ZONING BOARD OF APPEALS OF NORTH
ATTLEBOROUGH & others.[1]

No. 96-P-2078.

Bristol. February 19, 1998. - June 11, 1998.

Present: WARNER, C.J., KAPLAN, & SPINA, JJ.

*Zoning,* Building permit, Accessory building or use.

A Superior Court judge correctly granted summary judgment in favor of the
defendants in an action under G. L. c. 40A, § 17, seeking review of a deci-
sion of a zoning board of appeals which granted the defendants a building
permit for an accessory building to their residence that was permitted
under the applicable zoning by-law. [56-57]

CIVIL ACTION commenced in the Superior Court Department on
October 26, 1995.

The case was heard by *John A. Tierney,* J., on a motion for
summary judgment.

*Max Volterra* for the plaintiff.

*David C. Manoogian* for Jane Bowness & another.

KAPLAN, J. The North Attleborough building inspector granted
Jane and William Bowness a permit to build a structure contain-
ing a garage and swimming pool. The structure and its use
qualified, according to the inspector, as "accessory" to the
Bownesses' existing nonconforming home on the same lot. Ed-
win Maselbas, owner of an adjacent property, appealed the
building inspector's action to the zoning board of appeals, which
upheld it.[2] Maselbas commenced the present suit in Superior
Court for judicial review of the zoning board's decision. G. L.
c. 40A, § 17. A judge of that court allowed the Bownesses' mo-
tion for summary judgment, and Maselbas appeals.

---

[1]Jane and William Bowness.

[2]The vote was three to two to reverse the action of the building inspector,
but four votes are required to do so, hence the action was upheld.

Upon the summary judgment motion the following appeared without material dispute. Jane Bowness, a defendant in the present action, owns a residence in a lot located at 383 Mt. Hope Street, North Attleborough. It is a two-family home in an R-15 one-family residential district but is lawful as to the building and its use because the building was in existence when the town by-law provisions were adopted that restricted the district to one-family dwellings.[3] The Bownesses applied to the building inspector for a permit to build a structure on the lot that would be attached to and form an addition to the existing home and would enclose a three-car garage and a swimming pool on the first floor and include, on the second floor, a master bedroom, walk-in closet, bathroom, and game room.

The building inspector granted the permit, but Maselbas protested. Indeed, it appeared that such an attached structure, merging with the home, would offend against the by-law provisions that forbade expansion of the nonconforming building and use. See zoning by-law of North Attleborough §§ VII A.1.a., VII B.1.b.[4] Cf. *Inspector of Buildings of Burlington* v. *Murphy*, 320 Mass. 207, 209-210 (1946); *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 484-485 (1984); *Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631, 633-634 (1988). The proposed expansion could be legalized only by securing a special permit, which had not been sought.

Faced by these difficulties, the Bownesses revised their proposal. The structure was now to be freestanding, not merged with the home (ten feet apart from the home at the closest point), and would enclose a three-car garage and a swimming pool, with unfinished storage space on the second floor above the garage. Gone was the master bedroom and the rest. So disengaged from the home and stripped down, the structure, while retaining the same dimensions of height, length, and width as the original model, appears to fit the definitions of ac-

[3]The building is nonconforming also because it does not comply exactly with the later adopted front setback requirements.

[4]§ VII A.1.a.: "No such nonconforming use shall be enlarged or increased, nor extended to occupy a greater area of land than was occupied at the effective date of adoption or amendment of this bylaw."

§ VII B.1.b.: "No existing structure devoted to a use not permitted by this bylaw in the district in which it is located shall be enlarged, extended, constructed, reconstructed, moved or structurally altered except in changing the use of the structure to a use permitted in the district in which it is located."

cessory building and accessory use contained in § IX (Definitions) of the by-law:

> "Accessory Building. A subordinate building located on the same lot with the principal building or use, the use of which is customarily incidental to that of the main building or the use of the land."

> "Accessory Use. A use customarily incidental to that of the principal building or use of the land, and located on the same lot as such principal building or use. Swimming pools shall be considered an accessory use and shall be treated as a structure in regard to setbacks and side yard requirements."

The terms "subordinate" and "incidental," as understood in the context, and as elucidated in the decisions interpreting comparable by-law provisions, aptly describe the proposal in its revised form. See *Harvard* v. *Maxant*, 360 Mass. 432, 435-440 (1971) (citing a leading case, *Lawrence* v. *Zoning Bd. of Appeals of North Branford*, 158 Conn. 509, 512-513 [1969]); *Henry* v. *Board of Appeals of Dunstable*, 418 Mass. 841, 843-847 (1994); *Salah* v. *Board of Appeals of Canton*, 2 Mass. App. Ct. 488, 496 (1974); *Albee Indus., Inc.* v. *Inspector of Buildings of Waltham*, 10 Mass. App. Ct. 858 (1980); *Gallagher* v. *Board of Appeals of Acton*, 44 Mass. App. Ct. 906 (1997). More particularly, Schedule B of § V (Use Regulations) sets out, as accessory uses permitted in the R-15 single residence district —

> "4. Accessory residential building, such as a private garage, playhouse, greenhouse, tool shed, private swimming pool, carport, garage or similar accessory structures."

The building permit now applies to the structure as revised and in this form was approved by the zoning board and sustained by the court.

The plaintiff Maselbas suggests that the Bownesses are somehow subverting the prohibition on extension of nonconforming buildings and uses through the disguise of an accessory building or use. As the judge discerned, there is no disguise. Cf. *Crawford* v. *Building Inspector of Barnstable*, 356 Mass. 174, 179-180 (1969); *Carney* v. *Baltimore*, 201 Md. 130, 135-136 (1952). The new structure does not extend the nonconforming home physically by enlarging the footprint or otherwise, nor

does it extend the nonconforming two-family use. It is accessory to the existing building and use.

The plaintiff complains that the new structure is quite large in relation to the home,[5] but it is not a condition of the lawfulness of this accessory building or use that it be relatively small or of any particular size. It is true that a by-law provision about accessories may be so expressed as to introduce a question of undue elaboration or size: thus a permitted accessory use in a single-family residential district reading, "The renting of rooms or boarding for not more than four persons," looked to as many as four boarders in a few spare rooms of the residence; it did not comprehend the construction of a two-story addition to the residence which would contain four dwelling units each consisting of a living room, a bedroom, and a bathroom, all to accommodate the "boarders." *Gallagher* v. *Board of Appeals of Acton*, 44 Mass. App. Ct. at 907. There is no such definitional problem here. However, the new structure is not uncontrolled; it must comply with any applicable "intensity" regulations: see by-law § V (Use Regulations) Intensity Schedule A with respect to the R-15 district (note lot coverage, setbacks, open space, number of stories).

*Judgment affirmed.*

---

[5]The figures are not uniformly stated but we may say approximately: area of lot, 46,200 square feet; new structure, height 30 feet, width 30 feet, length 84 feet (area thus 2,520 square feet). Counsel for Maselbas has written that the new structure has height 30 feet, width 35 feet, length 90 feet (area thus 3,150 square feet), and the existing building 38 by 40 feet (area thus 1,520 square feet).