Fabricant, J.
INTRODUCTION
This is an appeal pursuant to G.L.c. 40A, §17, from a decision of the Belmont Zoning Board of Appeals (“the Board”) granting to the defendant Belmont High School Athletic Facilities Building Committee (“the Committee”) a special permit for the construction of light poles at the Belmont High School’s athletic field, so as to permit use of the field for evening athletic events. The plaintiffs, owners of abutting property, contend that such use, as well as the existence of the poles themselves, will subject them to various adverse effects, including impairment of the market value of their property. Presently before the Court are the defendants’ motion for summary judgment, as well as the plaintiffs’ motion to dismiss a counterclaim asserted by defendants for declaratory judgment with respect to application of the Dover Amendment, G.L.c. 40A, §3. For reasons that will be explained, both motions will be allowed.
BACKGROUND
The record before the Court provides the following background. The property in issue is owned by the Town of Belmont, and used as an athletic field for the Belmont High School. The plaintiffs own homes on *464 abutting lots.[1] During a period of time prior to March 5, 2001, the Town formulated a plan to improve the athletic field, including the installation of light poles for evening use. Various Town bodies approved the plan, including the building Committee and the School Committee. The Town’s voters approved a debt exclusion to fund the project. On March 5, 2001, the Committee applied to the Board for a special permit for light poles exceeding the twenty-foot limitation permitted as of right under the applicable by-law provision; the plan submitted called for light poles at heights of sixty and eighty feet.[2] After a series of public hearings, at which the present plaintiffs expressed their objections, on June 26, 2001, the Board issued a written decision making factual findings and granting the application, conditioned on observance of certain restrictions on the frequency and timing of evening use of the field.[3]
The Board heard presentations in support of the application from representatives of the Committee and from, according to its decision, “the designer, manufacturer, and supplier of the proposed lighting.” These presentations indicated, according to the Board’s decision, that “the height of the proposed poles is necessary to light the field and the track properly for safe use at night for the types of activities contemplated and to control light overspill and glare.” The supplier expressed the view, according to the Board’s decision, that lowering the eighty-foot poles to seventy feet “would result in off-site overspill in excess of the maximum allowed under the by-law and would not provide reasonable or safe lighting for the intended use.”
Based on the presentations made to it, the Board found that “it is inherently infeasible for the intended use to meet the height limitation of twenty (20) feet. . . The lights need to be higher than twenty (20) feet to serve the purpose of lighting the field and allowing safe nighttime use.” The Board went on to consider the question of, “But do they have to be at eighty (80) feet with a fifth and sixth pole at sixty (60) feet?” The Board answered this question by noting its general practice of deferring to “the professional judgments or opinions of consultants who appear before the Board,” and observing that ”[t]his is especially appropriate in this case considering the public nature of the project and the vetting thereof by many elected Town officials, including the Board of Selectmen, the School Committee, and Town Meeting. ” On that basis, and noting that those in opposition had not presented any alternative means of accomplishing the same result, the Board concluded that “the height, location, and number of poles and number of fixtures, is reasonable, necessary, and appropriate” for the use of the field.
The Board went on to consider whether “the proposed use will not cause harm or adverse disturbance to the environment or to other premises.”[4] In this regard, the Board balanced the concerns of the opponents with the interests of the Town, as those interests had already been determined by elected Town officials. The Board observed that the poles would be located at a substantial distance from any of the neighboring properties, and that they would be “slender and unobtrusive in color, concluding that ”it does not appear to the Board that the visual impact . . . will be unreasonable." The Board went on to conclude that, with the conditions imposed, “evening use of the facility will not cause harm or unreasonable adverse disturbance to the environment or to other premises.”
The plaintiffs filed this action on August 16, 2001. Their complaint set forth counts seeking both review under c. 40A, §17, and declaratory judgment under G.L.c. 231 A. The defendants responded, on January 2, 2002, with an answer and counterclaim. The defendants asserted that the plaintiffs lack standing, and also sought a declaration that no special permit is required because the Dover Amendment, G.L.c. 231 A, §3, permits the erection of the light poles regardless of the zoning by-law. The defendants' counterclaim, it appears, was the first time in the process that anyone invoked the Dover Amendment as having any bearing on the matter. The plaintiffs have responded with a motion to dismiss the counterclaim, asserting the absence of an actual controversy and the failure to exhaust administrative remedies; defendants oppose the motion.
The plaintiffs offer evidence that use of the field for athletic events generates increases in traffic, parking, littering, noise, and other adverse conditions in the neighborhood. They express concerns that evening use will increase such conditions and spread them over additional, and more objectionable, hours. They also express objection to the anticipated visual impact of the light poles themselves and of the lighting they will create as viewed from their properties.
Finally, the plaintiffs offer the affidavit of a real estate appraiser asserting his opinion that “the external obsolescence that will most likely result following the installation of lighting poles and fixtures at the Belmont High School athletic field, including but not limited to excessive noise, glare, light, automobile traffic, foot traffic, etc.” will reduce the market value of the plaintiffs’ properties, and that such reduction “maybe as high as fifteen percent.” The appraiser does not offer any opinion as whether the light poles themselves, or the light that would be visible from the plaintiffs’ property, as distinguished from the evening use of the field, would affect the plaintiffs’ property values.[5] Nor does he indicate whether light poles at sixty or eighty feet would affect property values more than, or in some different way than, light poles of twenty feet or of some intermediate height. The plaintiffs offer no evidence regarding the feasibility of evening use of the athletic field without the light poles, with lower poles, or with any alternative lighting arrangement.
*465 DISCUSSION
1. The Defendants’ Motion for Summary Judgment
Summary judgment is warranted where no genuine issues of material fact exist and the record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating that there is no genuine dispute of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party's case, or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, Inc., 404 Mass. at 17.
General Laws c. 40A, §17 provides for judicial review of a decision to grant or deny a special permit. The Court’s role in such an action is to:
hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require.
See Guiragossian v. Board of Appeals of Watertown, 21 Mass.App.Ct. 111, 114 (1985); DiGiovanni v. Board of Appeals of Rockport, 19 Mass.App.Ct. 339, 348 (1985). A reviewing Court “does not possess the same discretionary power as does the board, and the decision of the board can only be disturbed if it is based ‘on a legally untenable ground’ ... or is ‘unreasonable, whimsical, capricious or arbitrary.’ ” Old Colony CouncilBoy Scouts of America v. Zoning Board of Appeals of Plymouth, 31 Mass.App.Ct. 46, 49 (1991).
The Court is empowered to review the grant of a special permit only upon complaint of one or more "person[s] aggrieved” within the meaning of the statute. Such a person is one who suffers some infringement of legal rights or of interests protected by the zoning law. See Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 430 (1949). The injury must be more than speculative, Tsangronis v. Board of Appeals of Wareham, 415 Mass. 329, 335 (1993), but the term “person aggrieved” should not be read narrowly. Marotta v. Board of Appeals of Revere, 326 Mass. 199, 204 (1957).
Abutters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption they are “persons aggrieved.” Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. at 111. If standing is challenged, however, the jurisdictional question is decided on “all the evidence with no benefit to the plaintiffs from the presumption.” Id. See also Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992).
Determination of standing based on “all the evidence” does not require that the factfinder ultimately find the plaintiffs’ allegations meritorious. Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719,721 (1996). The plaintiffs must, however, put forth credible evidence to substantiate their allegations. Id. Standing then becomes a question of fact for the trial judge. Id. See also Bedford v. Trustees of Boston Univ., 25 Mass.App.Ct. 372, 377 (1988). Credible evidence, for this purpose, is a specific showing that the plaintiffs will suffer injury that is special and different from the concerns of the rest of the communiiy. Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. at 933. See also Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. at 132. The plaintiffs must show that their legal rights have been, or likely will be, infringed or their property interests adversely affected. Id. Plaintiffs must establish their injury by direct facts and not by speculative personal opinion. Id. Subjective fears about possible impairment of aesthetics are insufficient bases for aggrievement. Id. at 132-33.
The defendants’ motion for summary judgment asserts two grounds that are analytically distinct, but in the unusual circumstances of this case, closely related. Defendants contend, first, that the plaintiffs lack standing, in that they have failed to offer evidence sufficient to show any legally cognizable harm to them resulting from the grant of the special permit. Second, the defendants argue, in accord with the theory put forth in their counterclaim, that the special permit was unnecessary, and is essentially a nullity, because the Dover Amendment entitles them to implement their plan without any approval from the Board. For reasons that will become apparent, the Court will address the second argument first.
General law c. 40A, §3, commonly known as the Dover Amendment, provides in relevant part that zoning by-laws may not “regulate or restrict the use of land or structures ... for educational purposes . . . provided, however, that such land or structures may be subject to reasonable regulations concerning the bulk and height of structures and determining yard sizes, lot area, setbacks, open space, parking and building coverage requirements.” A series of appellate decisions have elucidated the rule established by this statute; municipalities may not prevent or restrict the use of property for educational purposes, either directly or indirectly through the imposition of unrea *466 sonable bulk or dimensional restrictions, but they may apply to educational institutions reasonable, generally applicable bulk or dimensional regulations that do not have the effect of preventing or unreasonably restricting the protected use. See The Bible Speaks v. Board of Appeals of Lenox, 8 Mass.App.Ct. 19, 33-34 (1979), and cases cited; see also Martin v. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. 141, 148 (2001). Educational uses, for purposes of the statute, include school athletic programs. See The Bible Speaks, supra, at 34.
The defendants argue that the Dover Amendment entitles them to implement their plan free of any requirement to obtain a special permit from the Board. They rely for this contention on The Bible Speaks, supra, in which the Appeals Court concluded that the plaintiff educational institution was entitled to a building permit for its proposed expansion, including installation of athletic field lights, without the need of a special permit. 8 Mass.App.Ct. at 34. In that case, however, unlike this one, the challenged zoning by-law purported to require a special permit not merely for departures from generally applicable dimensional regulations, but rather for educational uses per se. This requirement, the Appeals Court held, was void as inconsistent with the Dover Amendment. Accordingly, the town in that case could not apply its by-law to that plaintiff, and the plaintiff was entitled to proceed without a special permit. Here, the zoning by-law requires a special permit for light poles exceeding twenty feet, regardless of ownership or use of the property. On its face, the by-law complies with the Dover Amendment. Accordingly, the defendants are not exempt from the special permit requirement.
This conclusion does not mean that the Dover amendment is irrelevant to the issues in this case. To the contrary, in considering the defendants’ application for the special permit, the Board was obligated to ensure that application of the by-law restriction on height of light poles would not unreasonably restrict the educational use protected by statute. Although the Board’s decision makes no mention of the Dover amendment, apparently because no party specifically invoked that statute, the decision leaves no doubt that the Board did exactly what the statute requires. Applying the language of the by-law, the Board considered whether compliance with the height restriction would be “inherently infeasible.” That determination is conceptually indistinguishable from the question, required under the Dover Amendment, of whether application of that restriction would unreasonably restrict the educational use. Upon finding, based on the record before it, that compliance would be infeasible, the Board was required under the Dover Amendment to grant relief from that restriction. In considering the extent of the relief to be grantedthat is, approval of the plan as submitted, or of some lesser deviation from the by-law restrictionthe Board again performed exactly the type of reasonableness analysis that the Dover Amendment requires. Noting the absence of any proposed alternative, and the considered judgment of the numerous public officials who had participated in the planning process, the Board found that no lesser relief from the by-law restriction would be feasible.[6] Under the Dover Amendment, that finding left the Board no discretion to deny the special permit application as submitted.
To prevail in this appeal, the plaintiffs would have to show, first, that they are “person[s] aggrieved” by the Board’s action, and, second, that that action exceeded the authority of the board. The Board’s action cannot have exceeded its authority if it was required by law upon the facts as found by the Board. Thus, the plaintiffs’ burden, after showing their standing, is to present evidence of facts contrary to those found by the Boardthat is, to show as a factual matter either that compliance with the twenty-foot restriction would be feasible, in the sense that it would not unreasonably impede educational use, or that some intermediate alternative would be feasible in that same sense. To successfully oppose the defendants’ motion for summary judgment, the plaintiffs must identify evidence through which they would meet those burdens at trial. On the record presented, they have failed to do so, in either respect.
With respect to standing, the evidence offered shows adverse effects on the plaintiffs, including diminution of their property value, arising from the proposed expansion of use of the athletic field. That expanded educational use, however, is protected by the Dover Amendment, and the Board had no power to prevent it, either directly or indirectly through enforcement of the by-law restriction. To meet the standing requirement in this context, the plaintiffs would have to make a more specific showing: they would have to offer evidence of an adverse impact on their legally protected interests arising not from the expanded use, but from the specific relief granted by the Board from the only restriction that was within its authoritythat is, the height of the light poles. The only evidence the plaintiffs offer that bears on this issue at all is their own testimony regarding the anticipated visual impact of the light poles, and their appraiser’s inclusion of glare and light in the list of conditions that, in his opinion, will reduce property value. The former does not assist the plaintiffs in showing standing, since aesthetic interests are not among those generally protected by zoning. See Martin v. The Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. at 146.[7] The latter, although certainly addressing impact on a protected interest, provides no basis for a determination that such an impact will arise from the particular relief in issuethat is, the height of the light polesas distinguished from the protected use.
Moreover, even if the plaintiffs could show standing, they have failed to establish the existence of a genuine *467 dispute of material fact with respect to the merits of their challenge to the Board’s decision. As discussed supra, the effect of the Dover amendment here was that the factual findings the Board made compelled it to grant the special permit; upon finding those facts, the Board had no discretion to do otherwise. Thus, the plaintiffs could succeed on the merits only by providing an evidentiary basis for contrary factual findings. The plaintiffs offer no such evidence. They offer nothing from which the Court could find that the proposed expansion of the educational use, protected by the Dover Amendment, could reasonably be accomplished with light poles of twenty feet, or of any other height less than that authorized by the special permit. Accordingly, the plaintiffs have failed to establish the existence of a genuine dispute of material fact, and the defendants are entitled to judgment as a matter of law on the claim for review of the Board’s decision under G.L.c. 40A, §17.
This conclusion eliminates any actual controversy that may have existed regarding either the validity of the Board’s decision or the necessity of the special permit, and accordingly requires dismissal of both sides’ claims for declaratoiy judgment, count II of the plaintiffs’ complaint, and the defendants’ counterclaim. See generally, Bermant v. Board of Selectmen of Belchertown, 425 Mass. 400, 404 (1997).
CONCLUSION AND ORDER
For the reasons stated, both the Defendants’ Motion for Summary Judgment and Plaintiffs’ Motion to Dismiss Counterclaim are ALLOWED. Judgment shall enter dismissing both counts of the plaintiffs’ complaint, and dismissing defendants’ counterclaim.

 One of the plaintiffs rents out his property; the others live there.

 By-law Section 5.4.3(b) limits light fixtures of the type in issue to twenty feet, unless the Board grants a special permit upon a finding that compliance with that limitation “is inherently infeasible . . . and that all reasonable efforts have been made to avoid glare or light overspill onto residential premises.” The same by-law also limits “over-spill”; no special permit was sought or obtained from this part of the by-law, and it appears to be undisputed that the plan complies with the by-law in this regard.

 It appears that the conditions imposed by the Board consist of restrictions set forth in a policy statement adopted by the School Committee upon the Board’s suggestion.

 This standard derives from Section 5.4.8(c) of the by-law, which provides that “Special permits shall be granted if the [Board] finds that in light of peculiarities of location or circumstance, the proposed use will not cause harm or adverse disturbance to the environment or to other premises, will not jeopardize health or safety either on or off-premises, and that either any control or safety systems being relied upon are fail-safe and redundant, or it has been demonstrated that there would be not adverse health or safety consequences beyond the boundaries of the premises in the event of system failure, in light of on-site decay, dilution, or dispersion.”

 The appraiser makes no explicit reference to use. It is apparent, however, that noise, automobile traffic, and foot traffic result from use, not from light or light poles in themselves.

 The Board’s decision does not explicitly describe this conclusion as a factual “finding,” but leaves no doubt that it is.

 The plaintiff in that case was held to have standing in part because of §7.4.2 of the by-law, which directs that “views from public ways.and developed properties should be considerately treated in the site arrangement and building design” of projects granted special permits thereunder. In context, application of this provision appears to be limited to projects subject to requirements of design and site plan review, which this apparently was not. Noteworthy on this point is the exception in §7.4.2 “as may be more specifically provided elsewhere," and the specific criteria provided in §5.4.8 for special permits under that section.