DEBORAH A. BURNHAM[1] *vs.* TOWN OF HADLEY & others.[2]

No. 01-P-1605.

Middlesex. March 5, 2003. - July 2, 2003.

Present: BROWN, GREENBERG, & MASON, JJ.

*Zoning,* Home office, Constructive grant of relief.

A town's zoning board of appeals (board) did not violate G. L. c. 40A, § 15, as amended by St. 1987, c. 498, § 3, by failing to cause a detailed record of its decision to be made and filed with the town clerk within one hundred days after the date of the filing of the plaintiff's appeal of a decision of the town's building inspector, where § 15 allowed the board to file its decision within fourteen days following the one hundred day period in which it was required to act. [480-483]

In a civil action appealing the decision of a town's zoning board of appeals (board) that the plaintiff's business use of her residence violated the town's by-laws, the judge correctly determined that the board, in its discretion, could reasonably find that the plaintiff's business had grown beyond an incidental use of her residence. [483-485]

CIVIL ACTION commenced in the Superior Court Department on February 23, 1998.

The case was heard by *Mary-Lou Rup*, J.

*John H. Fitz-Gibbon* for the plaintiff.

*Joel B. Bard* for the defendants.

GREENBERG, J. The plaintiff, Deborah Burnham (Burnham), operates a business from her home. The business, Designed for You, employed Burnham, her husband, and one full-time employee and one part-time employee, both of whom were not residents of the home. The alternate building inspector for the town of Hadley cited her pursuant to the town's by-laws and

---

[1]Doing business under the name of Designed for You.

[2]Joanne Delong, Henry Fil, and Edward Kelly in their official capacities as members of the zoning board of appeals of Hadley; Timothy Neyhardt, as building/zoning inspector of Hadley; and Steven Nally, as alternate building/zoning inspector of Hadley.

ordered her to "cease and desist" (order) using employees at her residence. She appealed to the town's zoning board of appeals (board), which found for the building inspector. After a decision of Superior Court that upheld the board, she appealed to this court. Two discrete issues of statutory interpretation are raised by this appeal.

First, Burnham claims that the board violated G. L. c. 40A, § 15,[3] as amended by St. 1987, c. 498, § 3, by failing to cause a detailed record of its decision to be made and filed with the town clerk within one hundred days; she contends, therefore, that her appeal of the order was "constructively" granted. Second, she posits entitlement to continue her business use under a town by-law permitting home occupations.

1. *Constructive approval.* Burnham challenged the "cease and desist" order to the board on October 15, 1997. Eighty-four days later (within the one hundred day period), the board voted to deny the plaintiff's appeal. However, it did not file its decision with the town clerk until January 29, 1998, eleven days after the one hundred day period ended. The question put is whether the 1987 version of G. L. c. 40A, § 15, is to be read as requiring a board of appeals to "act" (i.e., decide or vote on an application for zoning relief) *and* file its final written decision with the town clerk within the same one hundred day period in order to avoid constructively granting the zoning relief requested, or whether the fourteen day period commences after expiration of the one hundred day period in which the board must act, as was held in *O'Kane* v. *Board of Appeals of Hing-*

---

[3]The pertinent part of G. L. c. 40A, § 15, reads:

"The decision of the board shall be made within one hundred days after the date of the filing of an appeal. . . . Failure by the board to act within said one hundred days . . . shall be deemed to be the grant of the appeal. . . . The petitioner who seeks such approval by reason of the failure of the board to act within the time prescribed shall notify the city or town clerk, in writing, within fourteen days from the expiration of said one hundred days. . . . The board shall cause to be made a detailed record of its proceedings, . . . setting forth clearly the reason for its decision . . . copies of all of which shall be filed within fourteen days in the office of the city or town clerk."

*ham*, 20 Mass. App. Ct. 162, 164 (1985) (*O'Kane*). In *O'Kane*, the court noted the confusion and uncertainty that resulted from the Legislature's failure to specify in the earlier 1975 version of the statute when the fourteen day filing period commences. *Ibid.*, citing *Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. 663, 666 n.2 (1985).[4]

The plaintiff suggests, as she did in the Superior Court, that the *O'Kane* analysis did not survive the 1987 amendment of § 15. By St. 1987, c. 498, § 3, the Legislature rewrote the section. It extended the period in which the board must act from seventy-five days to the present one hundred days and added a new requirement that within fourteen days after expiration of the one hundred day period, the applicant or petitioner must provide written notice of the constructive grant to the town clerk and all parties in interest, also informing them of their right to seek judicial review of it pursuant to G. L. c. 40A, § 17, by filing a notice of appeal to the court within twenty days of receipt of the notice.

Other than these two changes, the language of § 15 remained the same. As before, the board is required to make its decision within the prescribed period; and the failure to do that ("[f]ailure by the board to act") results in a constructive grant. As before, the board is to render its written decision and file it with the town clerk "within fourteen days" without specification when that period commences.

Of significance is the failure to bring § 15 into line with the zoning act's analogous provision which requires a town permit granting authority "to take *final* action [i.e., decide *and* file a decision] within . . . ninety days" (emphasis supplied) after the conclusion of the public hearing or hearings on a special permit application to avoid constructively granting the application.

---

[4]*Zuckerman* v. *Zoning Bd. of Appeals of Greenfield*, 394 Mass. at 666 (*Zuckerman*), held that it was merely directory, not mandatory, for the board to file its written decision within fourteen days of rendering its decision. There was no need in *Zuckerman* for the court to decide whether an outer time limit (i.e., the seventy-five day period prescribed by the previous version of § 15 in which the board must act, plus fourteen days thereafter) would apply because the board acted *and* filed its decision within the seventy-five day period, even though it did not file its decision within fourteen days of rendering its decision. *Id.* at 667.

G. L. c. 40A, § 9, par. 12. See *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 110-111 (1981) (constructive grant of special permit where permit granting authority failed to take final action on permit application by deciding and filing its decision within prescribed ninety day period).

The Legislature did not conform § 15 with the "finality" requirements contained in the analogous provision. Rather, it chose to retain § 15's seeming two-step process for handling zoning applications: first, the board must decide ("act"); then, second, it must reduce its decision to final written form and file it with the town clerk. "Finality" provisions that appear in some sections should not be implied or read into another section where they do not appear.

If, as the plaintiff suggests, amended § 15 requires the board both to decide and to file within the one hundred day period, there would be no reason for the Legislature to have included the additional proviso that the board must file "within fourteen days," where that is merely directory according to the *Zuckerman* case, and where the board would not even get fourteen days to file its decision if it had acted or decided any time after the eighty-sixth day of the one hundred day period.[5] If the Legislature had intended a requirement that the board both act *and* decide within one hundred days, then it could have so provided in one way or another. *Arthur A. Johnson Corp.* v. *Commonwealth*, 306 Mass. 347, 353 (1940), quoting from *Main* v. *County of Plymouth*, 223 Mass. 66, 69 (1916) ("It is a familiar principle of statutory construction that mere verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of the previous law").

---

[5]The plaintiff argues that this interpretation of the law conflicts with the statute's provision that the "petitioner who seeks approval by reason of the failure of the board to act within the time prescribed shall notify the city or town clerk, in writing, within fourteen days from the expiration of said one hundred days . . . ." G. L. c. 40, § 15. This language leaves open the question of what happens if the board acts within one hundred days but then fails to file its decision within the fourteen days provided by the statute. Under the reasoning of *Capone* v. *Zoning Bd. of Appeals of Fitchburg*, 389 Mass. 617, 624-625 (1983), this results in a constructive grant. To the extent that this hypothetical situation conflicts with the statute, we decline to reach the issue, as it is not presented on the facts before us.

We conclude that § 15 allows the board to file its decision within fourteen days following the one hundred day period in which it must act. If the board fails to act within the one hundred day period (which was not the case here), a constructive grant has already occurred, regardless when the board files a written decision with the clerk, and the petitioner may upon expiration of the one hundred days send out notice of this circumstance.

2. *The town by-law.* The home occupation issue is not as easily resolved. The Superior Court judge tracked the factual findings of the board, which essentially are not in dispute. The plaintiff began applying her own floral designs to premanufactured clothing in 1985. What originated as a one-person craft operation became a successful cottage industry. By 1997, the business sold approximately 5,000 miscellaneous items of handpainted shirts, sweatshirts, and sweaters on an annual basis. Her husband and two other employees, one full-time and the other part-time, worked for her. Most of the actual work was done within a large room added to the residence in 1991 as a "family room." She maintained a separate telephone line for the business. Marketing was conducted by Internet mail order, at various craft fairs, and in two retail stores. The plaintiff used a van parked in the family garage for business purposes, one employee parked in the plaintiff's driveway, and delivery trucks came once per day during the busy season.

The pertinent part of the town by-law governing uses and accessory uses in residential districts provides as follows:

"Section III. Use Regulations

"Except as provided in Section V-A-1 hereof, no building, structure or land, or part thereof shall be used for any purpose or in any manner other than for one or more of the uses hereinafter set forth as permitted in the district in which such building, structure or land is located, or set forth as permissible by special permit in said district and so authorized.

"III-A. Residence Districts

"1. Permitted Use

"a. Detached one-family dwelling

". . .

"d. Accessory use customarily incidental to a permitted main use on the same premises, including but not limited to the following:

"(1) Use of a room or rooms in a dwelling for customary home occupations, such as dressmaking, candy-making or for the practice, by a resident, of a recognized profession

"(2) Use of premises or building thereon in connection with his trade by a resident carpenter, electrician, painter, plumber, or other artisan, provided that no manufacturing or business requiring substantially continuous employment be carried on."

The ultimate question is whether the plaintiff has shown that her business use is "accessory" and "customarily incidental" to the residential use. See, e.g., *Harvard* v. *Maxant*, 360 Mass. 432, 437-440 (1971); *Cunha* v. *New Bedford*, 47 Mass. App. Ct. 407, 411-412 (1999). See also 2 Ziegler, Rathkopf's Zoning and Planning § 33:7, at 33-19 (2001):

"The use of a building as a residence necessarily involves, to a greater or lesser degree, some business activity. An attorney may discuss legal matters with a visiting friend or client, a salesman may compute his commissions or plan his forthcoming calls within the confines of his home, an engineer or architect may draw plans, or a business man may go over his accounts. These quasi-business uses are permissible as long as the type and magnitude of the business uses are such as to render them incidental to the primary residential use. When, however, they attain such magnitude as no longer to be incidental, they lose their status as an accessory use. In other words, the tail cannot wag the dog and the work cannot be conducted in such a fashion that it is of equal importance to the use of the buildings as a residence."

The board exercises great discretion in these matters, and a reviewing court will not disturb the board's decision unless it is "based on a legally untenable ground or is unreasonable, whimsical, capricious or arbitrary." *Subaru of New England, Inc.* v. *Board of Appeals of Canton*, 8 Mass. App. Ct. 483, 486 (1979). As we indicated in *Cunha* v. *New Bedford*, 47 Mass. App. Ct. at 412, it is within the discretion of the board to prohibit a use that has risen to a level where "it is no longer subordinate and minor in significance to the use of the property as a residence." Given that the plaintiff's operations include several employees, a large part of the premises is utilized for business-related activity, there is sometimes daily commercial traffic to and from the premises, the plaintiff maintains a separate telephone line and a separate vehicle for her business, and sales outlets include Internet mail order, craft fairs, and retail stores, the judge correctly determined that the board, in its discretion, could reasonably find that the plaintiff's business had grown beyond an "incidental" use.

*Judgment affirmed.*