JOHN H. GARABEDIAN *vs.* MARY WESTLAND & others[1]
(and three companion cases).

No. 01-P-1309.

Worcester. April 11, 2003. - September 26, 2003.

Present: PORADA, KASS, & GREENBERG, JJ.

*"Anti-SLAPP" Statute. Zoning,* Accessory building or use, Private airstrip. *Limitations, Statute of. Laches. Words,* "Incidental use."

In an action for a declaration pursuant to G. L. c. 231A that despite a cease and desist order from the town building commissioner, the plaintiff could, in maintaining and expanding an airplane hangar and a landing strip as an accessory use customarily incidental and subordinate to his residence, bring fill onto his land as a matter of right, and for an injunction restraining interference with that right, a Superior Court judge erred in allowing the special motion of the defendants — the plaintiff's neighbors and vocal opponents of the challenged activities — brought under G. L. c. 231, § 59H, the anti-SLAPP statute, to dismiss the complaint, where such action was not based solely on the petitioning activities of the neighbors, where the petition for declaratory judgment made no claims against a party in the sense contemplated by the anti-SLAPP statute, and where the plaintiff showed by a preponderance of evidence that the petitioning activity was devoid of any basis in law and that the defendants' acts had caused actual injury to him. [431-434]

In a civil action for judicial review under G. L. c. 40A, § 17, a Superior Court judge correctly determined that a town zoning board of appeals acted within its discretion in affirming a building inspector's denial of a permit for a second airplane hangar to be constructed at the plaintiff's residence, and for expansion of the original hangar and airstrip, because such use of the land, which primarily served as the plaintiff's residence, was not a customary and incidental accessory use under the town's zoning by-laws [434-436, 438]; likewise, the judge properly ruled that the permit-related six-year limitations period in G. L. c. 40A, § 7, barred the plaintiff's neighbors, who knew about the plaintiff's use of the original hangar from the inception of the process, from challenging that use [436-437].

In an action brought by the plaintiff's neighbors challenging the plaintiff's use of an airstrip he constructed on his property in 1984, a Superior Court

[1]Michael Johnston; Robert Garfield (building inspector of Southborough); John Boland (director of the department of public works of Southborough); Thomas McAuliffe, David W. Parry, and William Christensen (the selectmen of Southborough).

judge's findings of fact as to laches were not clearly erroneous, where there was evidence that the neighbors remained inactive for eleven years while the plaintiff used, maintained, and improved the airstrip, and acquired airplanes to use on it. [437-438]

CIVIL ACTION commenced in the Superior Court Department on March 15, 1996.

A special motion to dismiss was heard by *James P. Donohue,* J., and the case was heard by *Francis R. Fecteau,* J.

*John O. Mirick (Patrica L. Davidson* with him) for John H. Garabedian.

*Jonathan Shapiro* for Michael Johnston.

*Barry A. Bachrach* for Board of Selectmen of Southborough.

*Gary S. Brackett* for Mary Westland.

KASS, J. At the center of four actions that were consolidated for trial is a controversy over whether John H. Garabedian could maintain and expand an airplane hangar and a landing strip — facilities he described in a letter as "my private airport" — as an accessory use customarily incidental and subordinate to his residence. The parties also dispute whether G. L. c. 231, § 59H (the "anti-SLAPP" statute), is applicable to Garabedian's complaint for a declaratory judgment about whether he could bring fill upon his land as matter of right.

1. *Facts.* We take our facts from the careful and detailed findings of the trial judge. Garabedian, who is in the radio broadcasting business, lives at 24 Fairview Drive, Southborough, a property located in a residential zoning district. He restores and flies classic airplanes as a hobby. Garabedian first acquired a pilot's license in 1976. He flies about 100 hours per year. Until he built his own airstrip, he most often stored his airplane at, and flew in and out of, the Marlborough Airport, some six miles away from his residence.

In 1984, Garabedian received permission from the Federal Aviation Administration (FAA) to build a private grass airstrip, 1,800 feet long, fifty feet wide, usable between sunrise and sunset only, and only in VFR (visual flight rules) conditions. There would be no lights. With that permission in hand, Garabedian visited with the building inspector of Southborough to

talk about his plans for the airstrip. The building inspector, who was aware of three extant private turf airstrips in Southborough, talked in turn to town counsel. On the basis of that consultation, the building inspector determined that Garabedian's proposed strip was a use accessory to his residence, and that he required no permit to do the required land work. Garabedian, therefore, did not apply for a building permit for the airstrip.

A hangar for his airplanes (by then he owned more than one aircraft) did, however, require a building permit, and Garabedian applied for one on September 11, 1984. "Airplane hangar" was not among the preprinted use boxes on the permit application; upon consultation with the building inspector, Garabedian checked the box marked "other" and wrote "barn." FAA documents that Garabedian submitted to the building inspector were part of the building permit application.

Garabedian began work on the airstrip in the summer of 1984 and on the barn/hangar in the autumn of 1984. The airstrip was usable in the autumn; the hangar, a metal-clad wood-frame structure, was completed in the spring of 1985. For ten years, Garabedian used his private airport without incident. His collection of planes grew to ten, seven of which he customarily stored in Southborough. During that period he paved the central thirty feet of the airstrip and, with FAA permission, installed low intensity runway lights so that he could land in the evening. The number of flights to and from his Southborough strip did not increase.

At the end of the airstrip the grade dropped sharply. To give himself more "run out" space on landings, Garabedian hired a contractor in August, 1995, to truck in fill to even the grade and extend the runway. Eighteen-wheel gravel haulers rumbled by, or worse, stacked up along the property of neighbors. The neighbors complained to State and local officials, who required certain equipment repairs and removal of unclean fill, but the authorities did not order the job to stop. One neighbor, Johnston, a party to this case, photographed truckers with a video camera. They in turn attacked him and grabbed his camera. When work resumed at the end of February, 1996, the temperature of the antagonists was markedly higher. Now the neighbors protested vigorously at town hall. On February 28, 1996, the building

inspector issued an order to Garabedian to desist from bringing fill onto his land.

In the face of the altercations that had taken place and the cease and desist order of the building inspector, Garabedian on March 15, 1996, brought a complaint for declaratory and injunctive relief regarding whether he could, as he maintained, bring fill onto his land as matter of right; i.e., that no State or local law forbade his so doing. The complaint named as defendants — in addition to the town selectmen, building inspector, and director of public works — the two neighbors, Johnston and Westland, who had challenged his right to bring in fill. Johnston and Westland responded with a special motion to dismiss under the anti-SLAPP[2] statute, a motion that a judge of the Superior Court allowed. We shall consider the correctness of that action presently.

Garabedian also sought review of the building inspector's cease and desist order from the Southborough board of appeals (board). The board decided on June 19, 1996, in addition to affirming the building inspector's denial of a permit for Garabedian to build a second hangar, that Garabedian had the right to bring fill onto his property, albeit subject to restrictions that the board established. From those administrative decisions, Garabedian appealed to the Superior Court in a second action, under G. L. c. 40A, § 17. One aspect of the controversy has been disposed of. A second judge of the Superior Court, i.e., not the one who allowed the anti-SLAPP motion in the declaratory judgment action, decided on Garabedian's summary judgment motion that no by-law of Southborough precluded Garabedian from filling his land. She ruled that the town could not conjure a restriction on Garabedian's right to fill on the basis of their anticipation that he would attempt to make an unlawful use of the re-graded property (i.e., an expanded airstrip with a second hangar). The town officials and Johnston and Westland appealed to this court and we, in an unpublished memorandum and order under our Rule 1:28, affirmed the reasoning and decision of the

---

[2]The acronym SLAPP stands for "strategic litigation against public participation."

Superior Court judge. See *Garabedian* v. *Zoning Board of Appeals of Southborough,* 52 Mass. App. Ct. 1101 (2001).[3]

That left before a third Superior Court judge the following matters for consolidated trial: (a) Review under G. L. c. 40A, § 17, of whether Garabedian was entitled to a permit to build a second hangar on the ground that, as his growing airplane collection was just a hobby, the new structure, as the first hangar, was an accessory use, i.e., customarily incidental and subordinate to his residence under the town zoning by-law. The trial judge decided the second hangar was beyond customarily incidental use and ruled that the board, in affirming the building inspector's denial of a permit for the second building, had acted within its authority. (b) Whether the original barn/hangar was an accessory use within the meaning of the by-law. The two neighbors, acting under G. L. c. 40A, § 7, had requested that the building inspector enforce the zoning law and order Garabedian to stop using the first hangar and the airstrip because they were not accessory uses within the meaning of the by-law. The building inspector declined to do so; the board of appeals affirmed; and the neighbors asked for judicial review of that board decision. Again, the trial judge decided the board had acted within its authority. (c) Review of denial of a permit that Garabedian had applied for to build a 104-foot by 48-foot extension to the first hangar. The trial judge affirmed the denial.

2. *Dismissal of declaratory judgment complaint under anti-SLAPP statute.* Opposition activity to Garabedian's earth moving operations had come from certain of his neighbors, notably Johnston and Westland. They told drivers of trucks bringing in fill that the drivers were engaged in an illegal operation and might be liable for what they were doing. Johnston, a television cameraman, photographed trucks, an act that the grading contractor thought sufficiently hostile and intimidating to warrant reciprocation in the form of beating up Johnston and taking his camera. There was also, ultimately, official action in the form of the building inspector's cease and desist order.

In that venomous and unstable setting, Garabedian filed his complaint for a declaration, pursuant to G. L. c. 231A, that he

---

[3]After our decision, the trial judge (see *infra*) dismissed as moot Garabedian's declaratory judgment action against the town officials.

could bring fill onto his land as a matter of right, and for an injunction restraining interference with that right. The complaint states that Garabedian had received a cease and desist order from the building commissioner. Orders of public officials are not generally appropriate subject matter for declaratory judgment, if, as in the case of a building inspector, there are administrative remedies to exhaust. *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 450-451 (1973).[4] Compare *Iodice* v. *Newton*, 397 Mass. 329, 333-334 (1986). None of the defendants has raised the point, however, and, in any event, the complaint for declaratory judgment directs itself materially to the private challenges against Garabedian's project.

As noted, a judge of the Superior Court allowed the special motion of Johnston and Westland brought under G. L. c. 231, § 59H, to dismiss the complaint. Some of the challenges thrown up by the defendants Johnston and Westland to Garabedian had the character of "petitioning activity" as that has been described in the anti-SLAPP statute, G. L. c. 231, § 59H, and by decisional law interpreting that statute. They had made representations to town and State officials in hope of obtaining public intervention in Garabedian's land filling work, they had summoned police, they had leafleted the neighborhood to encourage opposition at public meetings, and they had organized residents to attend public meetings. Other aspects of their intervention, however, were private and lacked the characteristics of petition, namely the harassing of Garabedian's contractor and the somewhat intrusive surveillance of Garabedian's activity.

A motion to dismiss under G. L. c. 231, § 59H, lies if the movant shows that the plaintiff's claims are based on the petitioning activities of the movant alone and have no substantial basis beyond those activities. *Duracraft Corp.* v. *Holmes Prod. Corp.*, 427 Mass. 156, 167-168 (1998). *Baker* v. *Parsons*, 434 Mass. 543, 550 (2001). Petitions, by definition, are addressed to

---

[4]But see G. L. c. 240, § 14A, which provides for declarations of rights under municipal land use ordinances or by-laws. For an illustration of the application of that statute, see *Radcliffe College* v. *Cambridge*, 350 Mass. 613 (1966).

someone. The direct action of the individual defendants on the ground, involving Garabedian's grading contractor, the proclamations and warnings to the contractor's truck drivers, and the picture taking, were activities based on assertions by the neighbors of a legal position and involved no supplication to higher authority.[5] The target of those activities was Garabedian. His declaratory judgment action, therefore, was not based alone on the petitioning activities of the neighbors. Contrast *Mac-Donald* v. *Paton*, 57 Mass. App. Ct. 290, 295 (2003). For that reason, if no other, the motion to dismiss should not have been allowed, and there were other reasons to have denied it.

A complaint for a declaratory judgment is the least aggressive of complaints. Its purpose "is to remove, and to afford relief from, uncertainty and insecurity with respect to right, duties, status and other legal relations." G. L. c. 231A, § 9, inserted by St. 1945, c. 582, § 1. See *Boston* v. *Keene Corp.*, 406 Mass. 301, 304-305 (1989). There was plainly a difference of opinion between Garabedian and certain neighbors about whether he had a right to bring in fill and change the grade on some of his land. With his project begun and under siege, Garabedian was not doomed to proceed at risk of acting in violation of law, becoming obliged to undo work done, or to be liable for damages. He was, under G. L. c. 231A, § 1, entitled to find out what his rights were. The declaratory judgment action asserted no wrongdoing on the part of the defendants; it asked for no damages.[6] Such assertions are hallmarks of the bullying sort of action that the anti-SLAPP statute aims to discourage. Here, the neighbor defendants were not placed at risk of paying damages and, had they been content to do so, could have let the town carry the case for them.[7] The declaratory judgment action did not expose them inevitably to legal fees. Section 59H speaks in

---

[5]We are not unaware that the judge who considered the § 59H motion to dismiss concluded that petitioning activity was the target of the declaratory judgment action; but the fact of the encounters between the neighbors and Garabedian's contractor is not disputed.

[6]The injunctive relief sought in the complaint was dependant upon, and simply a mechanism for enforcement of, any favorable declaration Garabedian obtained.

[7]General Laws c. 231A, § 8, requires that all persons who have any interest which would be affected by the declaration of rights sought shall be made parties to the declaratory judgment action.

terms of the assertion of a civil claim, counterclaim, or cross claim against a party.[8] The petition for declaratory judgment here made no claims against a party in the sense of the statute.

A third reason to have denied the § 59H motion to dismiss is that such a motion shall not be granted if the nonmoving party shows by a preponderance of evidence that the petitioning activity is "devoid . . . of any arguable basis in law" and the moving party's acts caused "actual injury to the responding party." G. L. c. 231, § 59H. See *Baker* v. *Parsons*, 434 Mass. at 552-555. There was no showing of a basis, in the by-laws of Southborough or elsewhere, to regulate the kind of land filling that Garabedian was carrying on. The board of appeals of Southborough conceded as much in the summary judgment proceedings that resulted in a ruling in Superior Court, affirmed on appeal, that as Garabedian's land was neither in a flood plain district nor contained a wetland, no statutory prohibition limited Garabedian's right to place fill on his property to equalize the grade.[9] As to injury, the delays and consequent costs imposed on Garabedian supplied that condition.

3. *Whether the second hangar and enlargement of the first hangar were accessory uses within the meaning of the by-law.* No provision in the Southborough zoning by-law speaks to the building and use of an airstrip or a hangar for airplanes. The handle in the by-law at which Garabedian grasps is that concerning accessory uses. These facilities, he contends, are accessories to the primary use of his land for a single-family residence. The Superior Court judge concluded that the proposed second hangar, the extension of the first hangar, and the extension of the airstrip did not qualify as accessory uses because those facilities were not customarily incidental in Southborough to the primary allowed use, single-family residence. This is not the first time that Massachusetts courts have had occasion to consider whether a private airstrip and an airplane storage shed,

---

[8]The statute, in pertinent part, provides: "In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss." G. L. c. 231, § 59H.

[9]Garabedian's contractor acceded to the orders to remove improper fill. That issue was not involved in the declaratory judgment action.

i.e., a hangar, are permissible accessory uses. In *Harvard* v. *Maxant*, 360 Mass. 432 (1971), the court interpreted a zoning by-law definition of accessory use that was substantially similar to the one in force in Southborough. Section II of the latter provides: "Accessory Building or Use: building, structure, or use customarily incidental and subordinate to the principal permitted use of building or land, located on the same lot as the principal permitted building or use, and not prohibited by this By-Law."

An incidental use, the court wrote in *Maxant*, is one that is "dependent on or pertains to the principal or main use." *Id.* at 437. By way of illustration, the court recalled that in *Pratt* v. *Building Inspector of Gloucester*, 330 Mass. 344, 346-347 (1953), it had decided that a stable for the keeping of two horses for show purposes and as family pets was not commonly to be expected in connection with a single family house, although "[i]f the same question were presented as of the year 1900 . . . it is possible that a different answer would be required." *Id.* at 347.

By way of further explication of what "incidental" and "customarily" mean as they bear on the zoning classification of "accessory use," the court said that "incidental" meant the use was subordinate and minor in significance. *Harvard* v. *Maxant*, 360 Mass. at 438. "Incidental" also incorporates the idea of subordinate to the primary use (in this case a dwelling) and in reasonable relation to the primary use. *Ibid.* See *Lawrence* v. *Zoning Bd. of Appeals of N. Branford*, 158 Conn. 509, 512-513 (1969), to which the *Maxant* court cited extensively. The word also connotes something minor or of lesser importance. *Old Colony Council - Boy Scouts of Am.* v. *Zoning Board of Appeals of Plymouth*, 31 Mass. App. Ct. 46, 48 (1991). *Cunha* v. *New Bedford*, 47 Mass. App. Ct. 407, 411-412 (1999). By those criteria, a garden shed, a plant conservatory, a garage, a swimming pool, and a tennis court might be examples of accessory uses to a residence. "Customarily" implies a certain commonality of usage, a history of the lesser uses in conjunction with the primary uses. If the usage is rare, it is not customary. *Harvard* v. *Maxant, supra* at 439.

An 1,800-foot airstrip and airplane hangar are not minor. The

taking off and landing of airplanes have an impact well beyond the boundaries of the land on which the airstrip and hangar are located. It is a very large scale activity. Keeping elephants is different than keeping a dog, and it toys with language to say maintaining a landing stip and hangars is incidental to a single family house. Activity of a certain magnitude is no longer incidental. *Burnham* v. *Hadley*, 58 Mass. App. Ct. 479, 484 (2003). Neither is maintaining an airstrip and hangar common. According to the record, there were three airstrips in Southborough, one with an accompanying hangar, before Garabedian built his facilities in 1984. Precedent is not the equivalent of common, and one such airplane hangar and three airstrips in a town of 14.1 square miles do not constitute a common use.[10] It follows that such uses are not customarily incidental to a single-family house. For those reasons, the trial judge rightly decided that the board of appeals had acted within its authority in affirming the building inspector's denial of a permit to build the second hangar and the extension to the first hangar.[11]

4. *Status of hangar built in 1984.* Not until March 11, 1996, did neighbors of Garabedian ask the building inspector to enforce the zoning law (see G. L. c. 40A, § 7) by requiring Garabedian to remove the hangar he had completed in 1985 and had used for the intervening eleven years. The building inspector declined to do so on the ground, as he put it, that the statute of limitations had expired. The board of appeals affirmed that action.

Section 7 of G. L. c. 40A, inserted by St. 1975, c. 808, § 3, provides that "if real property has been improved and used in accordance with the terms of the original building permit issued by a person duly authorized," no action shall lie to seek "abandonment, limitation or modification of the use allowed" by such a permit, unless commenced within six years of the alleged violation of law. Within a month of filing his building permit application, Garabedian had furnished the building

[10]Hornor, Massachusetts Municipal Profiles 2002-2003, at 279 (Information Publications 2002). The population of Southborough in 1990 was 6,628 and in 2000 was 8,781. *Ibid.*

[11]Of course, a community may adopt zoning by-law provisions that allow airstrips and hangars, most likely subject to special permit. Southborough, as noted, does not currently have such a provision.

inspector with approvals of the FAA for his airstrip. That was on November 7, 1984.

Garabedian's neighbors[12] complain that they were deceived because his building was described on the building permit as a "barn," the term that the building inspector chose. Given the accompaniment of FAA materials, any person inspecting the building permit documents would not have supposed the barn was for animals. They would know that the barn was for the storage of things mechanical, a purpose consistent with one of the lexical definitions of a barn. See Webster's Third New Intl. Dictionary 177 (1993). Certainly the taking off and landing of airplanes, which preceded and followed construction of the hangar, served notice to the neighbors what permission had been granted, even without reference to documents on file at town hall.

The trial judge, who found as a fact that the neighbors knew about the use of the structure built from the inception of the process, correctly ruled that the challenge to the first hangar was barred by the permit-related six-year limitations period in G. L. c. 40A, § 7.

5. *Status of airstrip constructed in 1984.* Neither by the definition of structure in the Southborough by-law, nor that furnished in case law, see *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, 190-191 (1960), was the airstrip a structure. The airstrip, therefore, does not enjoy the benefit of the ten-year limitations period under G. L. c. 40A, § 7, for *structures* erected without a permit. See *Lord* v. *Zoning Bd. of Appeals of Somerset,* 30 Mass. App. Ct. 226, 228 (1991).

The town does not challenge the existence or use of the existing airstrip, but the neighbors do. As against them, Garabedian raised the defense of laches. The trial judge found that the neighbors had slept on their rights for eleven years before filing a complaint, and that Garabedian has changed position by improving and maintaining his airstrip and buying airplanes to use on it. To that degree, the inactivity of the neighbors contributed to a prejudicial change of position by Garabedian. The elements of laches are present. See *West Broadway Task*

---

[12]In terms of this litigation, the only neighbors involved are Johnston and Westland.

*Force* v. *Boston Hous. Authy.*, 414 Mass. 394, 400 (1993); *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 137-140 (1982); *Feinzig* v. *Ficksman*, 42 Mass. App. Ct. 113, 118 (1997). The findings of fact as to laches by the trial judge, when based on oral evidence, will not be disturbed by a reviewing court unless clearly erroneous. *Myers* v. *Salin, supra* at 138. There is no such error here.

6. *Expansion of the airstrip.* By parity of reasoning to our earlier discussion of whether the hangar was customarily incidental to the primary residential use, the airstrip expansion does not qualify as an accessory use.

*Conclusion.* In the declaratory judgment action, the judgment is vacated and a new judgment shall enter dismissing the action against all defendants on the ground of mootness. (See note 3, *supra.*) The judgment and order in that case awarding attorney's fees and costs to Westland and Johnston under G. L. c. 231, § 59H, are also vacated. We affirm judgments denying enforcement relief as to the existing airstrip and the existing hangar; affirming the decision of the board of appeals of Southborough to deny a permit for construction of a second hangar; and affirming the decision of the board of appeals of Southborough to deny a permit for construction of the proposed extension to the existing hangar.

*So ordered.*