NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-728

ANAIS J. ROSARIO

vs.

CARING BEES HEALTHCARE, INC., & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this case we address whether statements made to private individuals by a person alleging sexual harassment constitute petitioning activity protected by G. L. c. 231, § 59H, the "anti-SLAPP" statute. Anais Rosario claimed that she worked briefly for Caring Bees Healthcare (Caring Bees) until being assaulted by her supervisor, Jean Karangwa. Rosario made statements about Karangwa to private individuals. Nine months later, she filed a civil action against Caring Bees and Karangwa, and Karangwa filed counterclaims for defamation and intentional infliction of emotional distress based upon Rosario's statements to the private individuals. Rosario filed a special motion to dismiss the counterclaims under G. L.

---

[1] Jean Paul Karangwa.

c. 231, § 59H, and asserted that her statements qualified as petitioning activity. A Superior Court judge concluded that her statements did not constitute petitioning activity and denied the special motion to dismiss. We agree and affirm.

Background. We summarize the facts from "the pleadings and supporting and opposing affidavits." G. L. c. 231, § 59H.

In October of 2017, Caring Bees hired Rosario as a payroll and scheduling clerk. Over the next several weeks, Rosario allegedly suffered recurrent sexual harassment. According to Rosario, Karangwa, who was her supervisor, repeatedly made sexual comments to her, sent her an inappropriate video, and ultimately assaulted her by "grab[bing] her vaginal area."

Rosario reported these events to three private individuals. The day after receiving the video, she told a co-worker that Karangwa sent her a "sexually explicit and inappropriate video." On the same day of the alleged sex assault, Rosario texted the co-worker that "Karangwa had just grabbed her vaginal area." Also on that day, Rosario told her mother "what had happened." Later that day, Rosario told a second co-worker that Karangwa was a "pervert" and a "molester."

Rosario also reported these events to the government. On the day of the alleged assault, November 15, 2017, Rosario filed an incident report with the Boston Police Department and reported that Karangwa sent her sexually charged text messages,

2

shared the video, and assaulted her.  On January 19, 2018, Rosario filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) and reported the assault, the video, and sexual comments made by Karangwa and others.  In May 2018, Rosario withdrew the MCAD complaint and indicated that she intended to file a civil action.  On July 2, 2018, Rosario filed a complaint (later amended) under G.L. c. 151B in the Superior Court and alleged Karangwa repeatedly made sexual comments to her, sent her an inappropriate video, and ultimately assaulted her.  Rosario also alleged that she told a co-worker about the video and told her mother and a co-worker about the assault.

On August 20, 2018, Karangwa filed counterclaims.  He alleged that the following statements by Rosario to co-workers and her mother constituted defamation and subjected him to emotional distress:  (1) Karangwa sent her a "pornographic" video; (2) Karangwa was a "molester" and a "pervert"; and (3) Karangwa "grabbed her vaginal area."

Rosario filed a special motion to dismiss Karangwa's counterclaims under G. L. c. 231, § 59H.  That statute protects a party's constitutional right to petition the government by providing a process "to dispose expeditiously of merit less lawsuits that may chill petitioning activity."  Duracraft Corp. v. Holmes Prod. Corp., 427 Mass. 156, 166 (1998) (Duracraft). Rosario argued that the counterclaims constituted such an effort

3

to chill her petitioning activity.  The Superior Court judge "[a]ssum[ed] without deciding" that Rosario's pre-litigation statements constituted petitioning activity, but the judge denied the motion to dismiss because the counterclaims were not primarily brought to chill those activities.  Rosario appealed.

In an unpublished memorandum and order, a panel of this court vacated the order and remanded the matter to enable the judge to assess whether the statements constituted petitioning activity.  Rosario v. Caring Bees Healthcare, Inc., 97 Mass. App. Ct. 1122 (2020).  See Duracraft, 427 Mass. at 167-168, quoting G. L. c. 231, § 59H (a party filing a special motion to dismiss must first "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone").  On remand, the judge concluded that none of Rosario's statements to private individuals constituted petitioning activity under the statute and again denied Rosario's special motion to dismiss.  Rosario now appeals this second denial.

Discussion.  Rosario bears the burden of demonstrating that her conduct constitutes petitioning activity.  Duracraft, 427 Mass. at 167-168.  The governing statute, G. L. c. 231, § 59H, sixth par. Defines "a party's exercise of its right of petition" as follows:

4

"[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government."

Rosario contends that her statements to private individuals constitute petitioning activity, or are at least reasonably likely to encourage consideration and to enlist public participation in her claims to the police, MCAD, and the Superior Court. Based upon our "de novo" review of the record in this case, we conclude that Rosario has not met her burden of demonstrating that her statements to private individuals constitute petitioning activity. Haverhill Stem LLC v. Jennings, 99 Mass. App. Ct. 626, 631 (2021). See Reichenbach v. Haydock, 92 Mass. App. Ct. 567, 572 & n.14 (2017) (explaining rationale for standard of review).

"The right to petition a governmental body for redress of a grievance is the very essence of petitioning activity." North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 863 (2009) (North American). "The typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly

5

against development projects." Duracraft, 427 Mass. at 161. The objective of SLAPP suits is not to win them, but to intimidate people for "reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations." Id. at 161-162, quoting Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 5 (1989). While broadly written, the anti-SLAPP statute "has its limits." Kobrin v. Gastfriend, 443 Mass. 327, 336 (2005). In order to determine if statements constitute petitioning activity under the statute, courts "consider them in the over-all context in which they were made." North American, 452 Mass. at 862.

At the time she made her statements to her co-workers and her mother, Rosario was not engaged in petitioning activity under the statute because her statements lacked the "essence of petitioning activity" -- contact with the government -- or at the very least efforts to "reach governmental bodies" (citation omitted). North American, 452 Mass. at 862, 863. See Kobrin, 443 Mass. at 330 (petitioning involves "seeking from the government any form of redress for a grievance"); Garabedian v.

6

Westland, 59 Mass. App. Ct. 427, 433 (2003) (petitioning involves "supplication to higher authority"). Rosario's private statements "lacked the characteristics of petition" contemplated by G. L. c. 231, § 59H. Garabedian, supra at 432. Characteristics of petitioning activity typically include a statement, report, complaint, request, or demand to a government entity. See, e.g., Benoit v. Frederickson, 454 Mass. 148, 153 (2009) ("reporting of a rape to police"); Dever v. Ward, 92 Mass. App. Ct. 175, 179 (2017) ("appeals to the police and to the courts"); O'Gara v. St. Germain, 91 Mass. App. Ct. 490, 497 (2017) (reporting "suspected criminal activity to the police"). Petitioning may also take the form of filing a lawsuit or taking other court action. See, e.g., 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 165-167 (2017) (filing complaint seeking declaratory judgment, petition for injunctive relief, application for criminal complaint); Van Liew v. Stansfield, 474 Mass. 31, 36 (2016) ("application for a harassment prevention order"). Petitioning activity may also include statements to the government "made outside any formal governmental proceedings," North American, 452 Mass. at 862, see, e.g., Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002) (statements to Federal Deposit Insurance Corporation regarding proposed sale of property); Baker v. Parsons, 434 Mass. 543, 545-551 (2001) (letter and statements to Federal and State environmental

7

agencies), or "statements made by one participant in a pending governmental proceeding to another in an effort to settle the controversy." Plante v. Wylie, 63 Mass. App. Ct. 151, 159 (2005). Rosario has not cited, and we have not found, any appellate decision where statements lacking a "supplication to higher authority," Garabedian, 59 Mass. App. Ct. at 433, or efforts to at least "reach governmental bodies," North American, 452 Mass. at 862, qualify as petitioning activity under G. L. c. 231, § 59H.

Rosario contends that her statements to co-workers and her mother constitute petitioning activity because they "were inextricably connected to the [subsequent] filing of her police report, her MCAD charge and, ultimately, this litigation." She argues that her statement to a co-worker reporting the assault was part of the sexual harassment complaint process under G. L. c. 151B; that her statements to another co-worker about the video and the touching were calculated to enlist public participation and to encourage government review of her claim; and that her statement to her mother resulted in her mother advising her to file a police report. We conclude that Rosario's statements to her co-workers and her mother were independent from her subsequent complaints to the government and fell outside the scope of petitioning activity under G. L. c. 231, § 59H.

8

Rosario suggests that her petitioning activity began before her formal report to the MCAD because she attempted to report sexual harassment to the co-worker she believed was responsible for such complaints pursuant to G. L. c. 151B, § 3A (b) (1) (v) (requiring employers to adopt process for filing sexual harassment complaint). Private actions taken in anticipation of contacting the government do not automatically constitute petitioning activity. See, e.g., Giuffrida v. High Country Investor, Inc., 73 Mass. App. Ct. 225, 243 (2008) ("letter notifying the defendant of intent to take legal action"); Maxwell v. AIG Dom. Claims, Inc., 72 Mass. App. Ct. 685, 694 (2008) (insurance company investigation); Kalter v. Wood, 67 Mass. App. Ct. 584, 587 (2006) (complaint letter to health insurance company). Even if we assume that an internal complaint of harassment could in some circumstances be petitioning, the record does not support Rosario's suggestion that she was making a report in connection with c. 151B. To the contrary, the undisputed record shows that the co-worker, an office assistant, simply reached out to Rosario after she quit. There is nothing in the record indicating that the office assistant had any responsibility with respect to sexual harassment. Thus, viewing the statements in context, we agree with the judge that Rosario did not meet her burden of showing

that she was engaged in petitioning activity when speaking with the office assistant.

The private conversation between Rosario and her co-worker about the video and the alleged sex assault cannot reasonably be construed as an effort to "enlist public participation" or to "encourage consideration or review of an issue" in Rosario's subsequent petitioning activities. G. L. c. 231, § 59H. The same is true for the private conversation between Rosario and her mother about the alleged assault. Conduct aimed at enlisting public participation or encouraging government action requires, at a minimum, a broad appeal or a call to action. See, e.g., Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 150-151 (2017) (statements to newspaper while hospital under investigation by Department of Mental Health); Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 485 (2017) (blog post part of "ongoing efforts to influence governmental bodies by increasing the amount and tenor of coverage around the environmental consequences of the [oil] spill"); Office One, Inc., 437 Mass. at 117, 122 (leaflets distributed to condominium unit owners urging calls to government officials); Wynne v. Creigle, 63 Mass. App. Ct. 246, 253 (2005) (statements to fire department and newspaper); MacDonald v. Paton, 57 Mass. App. Ct. 290, 295 (2003) (interactive website designed to generate interest on issues of concern in town). Rosario's discreet

statements to her mother and co-workers lacked both a broad appeal and a call to action. Rosario contends that the nature of her statements (sexual harassment and assault) is sufficient, by itself, to satisfy the requirements for enlisting public participation and encouraging government review. "That a statement concerns a topic that has attracted governmental attention, in itself, does not give that statement the character contemplated by the statute." Global NAPS, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 605 (2005).

While we agree with Rosario that conferring with loved ones (like her mother) can be of critical importance to sexual assault victims, we disagree that such conversations necessarily constitute petitioning activity. In support of the argument that the conversation with her mother is petitioning activity, Rosario cites Benoit, 454 Mass. at 153. In that case, a minor child reported a rape allegation to her parents, and the parents assisted her in reporting the allegation to the police. Id. at 149-150, 153. Criminal charges followed and were ultimately dismissed. Id. at 150. The alleged assailant then sued the child and her parents. Id. The Supreme Judicial Court concluded that the child's report to the police as well as the parents' "involvement in their minor daughter's reporting of crime to the police plainly comes within the scope of petitioning." Id. at 153. Thus, the petitioning activity in

11

Benoit was the report to the police, not the conversation between the child and her parents.

Unlike the situation in Benoit, Karangwa's counterclaims did not infringe on any petitioning activity. Karangwa's counterclaims expressly limited allegations to Rosario's conversations with private individuals and lacked any nexus to her appeal to the government. Compare Haverhill Stem, LLC, 99 Mass. App. Ct. at 628-629, 634 (petitioning activity in Land Court and zoning proceedings not implicated by complaint based on extortion); Citizens Ins. Co. of Am. v. 290 Auto Body, Inc., 95 Mass. App. Ct. 515, 518 (2019) (petitioning activity in civil action regarding insurance claim not implicated by counterclaim "involving alleged unruly assaultive behavior"); Reichenbach, 92 Mass. App. Ct. at 570, 574 (petitioning activity in opposing construction of oceanfront home not implicated by claim of "threats, intimidation, [and] coercion"); Garabedian, 59 Mass. App. Ct. at 432 (petitioning activity in opposing airport expansion not implicated by claim of "harassing" contractor and engaging in "intrusive surveillance"); Ayasli v. Armstrong, 56 Mass. App. Ct. 740, 748 (2002)(petitioning activity in opposing addition to home not implicated by claim based on "intentionally interfering" with right to use property). Because the counterclaims here are based on "private interaction" rather than an effort to "influence, inform, or even reach a government

12

body," the judge properly denied the special motion to dismiss. Citizens Ins. Co. of Am., 95 Mass. App. Ct. at 518.

Rosario's private statements to individuals do not transform into petitioning activity merely because she republished some of those statements in a report to the police, a complaint to MCAD, and a civil action. "Individuals who petition the government are not necessarily free to engage in gratuitous publication of the petition elsewhere without consequence." Kalter, 67 Mass. App. Ct. at 588. See, e.g., Blanchard, 477 Mass. at 153 (email to hospital staff not petitioning activity though related government investigation underway); Cadle Co. v. Schlichtmann, 448 Mass. 242, 254 (2007) (statements about an adversary not petitioning activity though published during litigation); Burley v. Comets Community Youth Ctr., Inc., 75 Mass. App. Ct. 818, 822-824 (2009) (statement to private individuals not petitioning activity though similar no-trespass letter sent to police and court); Ehrlich v. Stern, 74 Mass. App. Ct. 531, 540-542 (2009) (posting on website not petitioning activity though related to class action lawsuit); Global NAPS, Inc., 63 Mass. App. Ct. at 601, 607 (statement to reporter not petitioning activity though communicated during pending arbitration appeal). In Kalter, a patient sent identical letters to an insurance company, the police, and the Division of Professional Licensure (DPL). Kalter, 67 Mass. App.

13

Ct. 585. The chiropractor, who was the subject of the letters, filed a claim against the patient, and the patient claimed the letters were protected petitioning activity. Id. We agreed that the letters sent to the police and DPL constituted petitioning activity, but the identical letter sent to the insurance company did not. Id. at 587. The same reasoning holds true here. Rosario may have made similar statements to private individuals and the government. As in Kalter, statements to the government constitute petitioning activity, but statements to private individuals, in the "over-all context" here, do not. North American, 452 Mass. at 862.

Conclusion. The anti-SLAPP statute "provides its own express" definition of petitioning activity Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 727 n.3 (2022). We are bound to review Rosario's statements with reference to the plain language of the statute, and the "over-all context" in which the statements were made. North American, 452 Mass. at 862. Based upon that governing standard and the record here, Rosario has not met her burden of proving that her statements to private individuals constituted petitioning activity under G. L. c. 231, § 59H. The order denying the special motion to dismiss is

14

affirmed.  The parties' requests for appellate attorney fees and costs are denied.

Order denying special motion to dismiss affirmed.

By the Court (Neyman, Shin & Hodgens, JJ.[2]),

Clerk

Entered:  April 5, 2023.

_____

[2] The panelists are listed in order of seniority.