DAVID L. MCINTYRE & others[1] *vs.* BOARD OF SELECTMEN OF ASHBY & another[2]; PAUL MURRAY & others,[3] interveners.

No. 90-P-349.

Middlesex. April 12, 1991. - January 6, 1992.

Present: BROWN, PERRETTA, & PORADA, JJ.

*Zoning,* Material removal, By-law, Special permit. *Real Property,* Removal of material. *Municipal Corporations,* By-laws and ordinances, Earth removal. *Statute,* Construction. *Words,* "Any ordinance or by-law."

In an action by plaintiffs seeking a declaration that, where a town's zoning board of appeals had granted them a special permit to remove sand and gravel in a residential-agricultural area of the town, the town's selectmen were without authority to deny their application for a permit under a general earth removal by-law adopted by the town under the authority of G. L. c. 40, § 21 (17), this court, after determining that the word "order," as appearing in the final sentence of paragraph (17) was inadvertently substituted for the intended word "ordinance," concluded that there was no legislative intent in paragraph (17) to preclude the application of the general by-law to the earth removal proposal approved under the zoning by-law and, applying paragraph (17) to the facts of this case, that the plaintiffs' proposed use was not entitled to any protection. [739-741]

In an action by plaintiffs, who had received a special permit from a town's zoning board of appeals to remove sand and gravel from land in a residential-agricultural area of the town, seeking review of a decision by the town's selectmen denying their application for a second permit under the town's general earth removal by-law, the judge did not err in concluding that the selectmen committed no error of law that would justify the extraordinary judicial intervention provided for in G. L. c. 249, § 4. [741-742]

---

[1] Judith A. McIntyre and Robert J. McIntyre.

[2] The town of Ashby.

[3] The interveners are nine of the plaintiffs' neighbors who opposed the application.

CIVIL ACTION commenced in the Superior Court Department on December 5, 1988.

The case was heard by *Robert H. Bohn, Jr.,* J., on motions for summary judgment.

*Louis N. Levine* (*F. Alex Parra* with him) for the plaintiffs.

*Arthur P. Kreiger* for Paul Murray & others.

*C. Deborah Phillips,* Town · Counsel, for Board of Selectmen of Ashby & another.

PERRETTA, J. To remove sand and gravel from land in a residential-agricultural area of Ashby, an excavator must have two permits: a special permit from the zoning board of appeals (board) granted under the zoning by-law as well as a permit from the defendant board of selectmen (selectmen) issued pursuant to the town's general earth removal by-law. This general by-law was enacted by Ashby under the authority of G. L. c. 40, § 21(17). Although the plaintiffs received a special permit from the board, the selectmen denied their application for the permit under the general by-law. They found that the noise and dust which would be created by the proposed activity would constitute a nuisance and be detrimental to the adjacent property and neighborhood. The plaintiffs then brought this action in the Superior Court seeking a declaration that, where the board had granted them a special permit, the selectmen were without authority to deny their application. In the alternative, the plaintiffs sought review of the selectmen's decision, under G. L. c. 249, § 4, and an order compelling them to issue the required permit. On cross motions for summary judgment, the judge concluded that the selectmen could consider the plaintiffs' application notwithstanding the permit from the board and that the selectmen's decision was not arbitrary. We affirm.

1. *The by-laws.* Section 7.2 of Ashby's zoning by-law authorizes the board to grant special permits for certain enumerated uses of land situated in a residential-agricultural zone "after a public hearing and subject to appropriate regulations, if determined to be neither offensive nor detrimental to the residential/agricultural area." Earth removal is one of

these enumerated uses. Section 7.202 allows the removal "for commercial purposes provided it is not less than 250 feet from a public way and a plan for post-mining site reclamation is approved by the Town Conservation Commission." In issuing the plaintiffs a special permit on October 5, 1987, the board expressly advised that the "applicant must request and receive a permit from the Board of Selectmen for excavation of sand and gravel pursuant to the town by-law . . . ."[4]

That general by-law, to which the board referred the plaintiffs, reads, as here pertinent: "No permit shall be issued hereunder unless an application therefor is filed with the . . . [s]electmen and it is determined by them, after public hearing, that the operations under the requested permit will not be contrary to the best interests of the Town. For this purpose, an operation . . . shall be considered contrary to the best interests of the Town which (1) will be injurious or dangerous to the public health or safety, constitute a nuisance . . . or (2) will produce noise, dust, or other effects, observable at the lot lines to an objectionable degree, or will be detrimental to the normal use of the adjacent property."

2. *The statute.* By G. L. c. 40, § 21, the Legislature authorized local governments to enact ordinances, by-laws, and regulations pertaining to certain matters thereafter described in enumerated paragraphs (1) through (24), as of 1981. More specifically, and as here pertinent, § 21 reads: "Towns may, for the purposes hereinafter named, make such *ordi-*

---

[4]In granting the plaintiffs a special permit, the board was not approving the application. Rather, it was complying with a Superior Court judgment ordering the board to issue the special permit. After the board had initially denied the plaintiffs' request, the plaintiffs brought an action in the Superior Court. On the board's motion for summary judgment, the judge (one other than the judge in the instant case) concluded that the plaintiffs were entitled to the special permit because the board had failed to comply with G. L. c. 40A, § 15. More specifically, the board's decision had not set forth clearly the reasons for the denial, the vote of each member, and the statute by which any appeal could be taken. It appears that the board complied with the judgment and issued the special permit rather than lodge an appeal. See, e.g., *Newbury Junior College* v. *Brookline*, 19 Mass. App. Ct. 197, 208 (1985), and cases therein collected.

*nances and by-laws* . . . as they may judge most conducive to their welfare, which shall be binding upon *all* inhabitants thereof and *all* persons within their limits" (emphasis supplied).

Legislative enactments by local governments on the matter of earth removal are authorized by paragraph (17). As amended through St. 1973, c. 317, that paragraph provides that towns may make ordinances and by-laws:

> "For prohibiting or regulating the removal of soil, loam, sand or gravel from land not in public use in the whole or in specified districts of the town . . . . The superior court shall have jurisdiction in equity to compel compliance with *any ordinance or by-law* made hereunder. [There shall be a] penalty for violation of *any ordinance or by-law* made hereunder . . . . *Any order or by-law* prohibiting such removal hereunder shall not apply to any soil, loam, sand or gravel which is the subject of a permit or license issued under the authority of the town or by the appropriate licensing board of such town or by the board of appeal, or which is to be removed in compliance with the requirements of a subdivision plan approved by the town planning board" (emphasis supplied).

It is the plaintiffs' position that, although paragraph (17) enables a town to enact an earth removal by-law, there is an express exemption in the statute which precludes simultaneous application of the general and zoning by-laws to the same proposal. They seize upon the word "order" appearing in the last sentence of paragraph (17) and construe that provision to mean the following. Because a special permit for their proposal was issued by the board under the zoning by-law and because the selectmen's decision on the application constitutes an "*order* or by-law prohibiting" their proposed earth removal, that order "shall not apply." Consequently, where an application has been approved by the board under the zoning by-law, and a permit has been "issued," the only action open to the selectmen which could be given effect

would be to approve the application under the general by-law. Since it would be pointless to require the selectmen to rubberstamp the application, paragraph (17) must be read as expressly exempting such simultaneous application of the by-laws.

3. *The proper construction of paragraph (17)*. Applying basic principles of statutory construction, we are driven to the conclusion that the word "order," as appearing in the final sentence of paragraph (17), was inadvertently substituted for the intended word "ordinance." As stated in a comparable situation: "It is true that we are not faced with the typical case of ambiguity in, or inconsistency between, sections of an act. The choice open to us here is between adopting the literal meaning of the words used, which renders the section unintelligible, and substituting or adding a word which was clearly intended and which gives the section the meaning plainly intended . . . . We might resist substitution if we were not faced with such a clear case of mistake and if other legislative enactments on the same subject did not make the intended phrase so manifestly apparent." *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. 186, 197 (1984), citing Sands, Sutherland Statutory Construction § 47.36 (4th ed. 1973). See also *Willard* v. *Board of Appeals of Orleans*, 25 Mass. App. Ct. 15, 20-21 (1987).

Our conclusion that the manifestly apparent phrase intended by the Legislature is "any *ordinance* or by-law" is based upon the purpose of c. 40, § 21, in general, and paragraph (17) specifically. Moreover, our construction aligns paragraph (17) with the other paragraphs of § 21. As can be seen from § 21 and its twenty-four paragraphs, its purpose is to enable local governments to legislate on specific matters of local concern by ordinances, by-laws, regulations, or enactments which have binding effect on all inhabitants. The phrase "any ordinance or by-law" is repeatedly used throughout § 21, including paragraph (17).

The specific purpose for which paragraph (17) was enacted was to allow a municipality "to have two separate ordinances or by-laws to avoid the involved and strict procedural

requirements for adopting or amending zoning ordinances and by-laws . . . . While G. L. c. 40, § 21(17), is available to municipalities which have no zoning ordinances or by-laws, it is equally available to other municipalities." *Goodwin* v. *Selectmen of Hopkinton*, 358 Mass. 164, 170 (1970) (citations omitted). As explained in *Toda* v. *Board of Appeals of Manchester*, 18 Mass. App. Ct. 317, 320 (1984): "These two modes of regulation need not be mutually exclusive. Thus, a zoning by-law may confine earth removal to specified zoning districts, while a separate earth removal by-law may govern how earth removal is carried out within those districts."

We see no legislative intent in § 21(17) to preclude the application of a general by-law to an earth removal proposal approved under the zoning by-law. " 'A statute should not be read in a manner that defeats its intended utility.' *Simon* v. *Solomon*, 385 Mass. 91, 100 (1982). Instead, when '[t]he draftmanship is faulty, . . . the duty devolves upon us to give . . . [the statute] a reasonable construction.' *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976), quoting *Massachusetts Turnpike Auth.* v. *Commonwealth*, 347 Mass. 524, 528 (1964)." *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. at 196. As corrected, the last sentence of paragraph (17) reads: "Any *ordinance* or by-law prohibiting such removal hereunder shall not apply to any soil, loam, sand or gravel which is the subject of a permit or license issued under the authority of the town or by the appropriate licensing board of such town or by the board of appeal, or which is to be removed in compliance with the requirements of a subdivision plan approved by the town planning board."

Paragraph (17) was added to § 21 by St. 1949, c. 98, and amended to include the now final sentence by St. 1967, c. 870. We think the clear intent of the Legislature in amending paragraph (17) was to provide protection to earth removal operations permitted at the time of a municipality's enactment of a prohibition against that activity "in the whole or in specified districts of the town." That activity would not, however, be immune from the enactment of a general by-law

regulating earth removal. See *Kingston* v. *Hamilton*, 2 Mass. App. Ct. 773, 774 (1975). The 1967 amendment to paragraph (17) was intended to serve the same function for a general earth removal by-law as does G. L. c. 40A, § 6, in respect to the zoning by-law. See *Byrne* v. *Middleborough*, 364 Mass. 331, 334 (1973), where it was held that the preexisting use protection afforded by the zoning enabling statute was limited to zoning by-laws.

Applying § 21(17), as we have construed it, to the present controversy, we conclude that the plaintiffs' proposed use is not entitled to any protection. They did not have a special permit from the board at the time of the enactment of the general by-law.

Moreover, Ashby's general by-law does not prohibit earth removal. Through its zoning by-law, Ashby has limited earth removal to those districts zoned for mixed residential-agricultural and industrial uses, and then only upon the grant of a special permit. Under the general by-law, earth removal is permitted upon a determination by the selectmen that the operation "will not be contrary to the best interests of the Town," as that term is therein defined. Although the standards to be used in determining the town's best interests are more specific and detailed than those recited in the zoning by-law, the by-laws are consistent with each other. Cf. *Glacier Sand & Stone Co.* v. *Board of Appeals of Westwood*, 362 Mass. 239 (1972).

That these particular plaintiffs have been denied a permit under the general by-law does not force the conclusion that the by-law is prohibitory rather than regulatory. See *Butler* v. *East Bridgewater*, 330 Mass. 33, 36-37 (1953). The power to regulate an activity necessarily comprehends the power to prohibit it in a specific instance, so long as there is no abuse of that authority. *Ibid.*

4. *The selectmen's decision.* Because there is nothing in § 21(17), which precluded the selectmen from acting upon the plaintiffs' application, we turn to consider whether the judge erred in concluding that the selectmen "committed no error of law that would justify the extraordinary judicial in-

tervention provided for in G. L. c. 249, § 4." Although the plaintiffs advance numerous claims, only one merits mention. One of the factors arguably relied upon by the selectmen in their original decision was an increase in traffic from the plaintiffs' trucks over the town's narrow, winding roads. But see *Stow* v. *Marinelli*, 352 Mass. 738, 742 (1967); *Kelleher* v. *Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 183 (1973). When the plaintiffs requested reconsideration of their application, the selectmen held a second hearing and issued a new decision.

Some of the concerns listed in the first decision were again voiced by the selectmen after the second hearing. However, the selectmen expressly refrained from considering traffic concerns in their subsequent decision which was the one reviewed by the judge. When his statement that "fifteen trucks rumbling through . . . [the] small, quiet town twice each day for three years was a grim prospect" is read in its appropriate context, it is clear that he was referring to the noise and dust that would be produced by the operation. Those factors, noise and dust, were discussed at length by the selectmen in their second decision.

Finally, we see no obligation upon the selectmen to set conditions upon the plaintiffs' proposal in order to make their operation permissible. Those suggestions offered by the plaintiffs, a sprinkler system and covers on the trucks, were found insufficient for reasons explained by the selectmen. Compare *Butler* v. *East Bridgewater*, 330 Mass. at 39-40. We see no error in the judge's conclusion that the selectmen's refusal of a permit was not unwarranted. See *Mayor of Revere* v. *Civil Serv. Commn., ante* 315, 321-322 (1991).

5. *Conclusion.* As earlier noted, the plaintiffs sought a declaration under G. L. c. 231A that Ashby's sand and gravel by-law could not be applied to their proposed earth removal operation. The judgment dismisses the complaint, on all counts, against the defendants. A declaration should be entered that the selectmen were not precluded by G. L. c. 40, § 21(17), from acting upon the plaintiffs' application for a permit pursuant to the Ashby sand and gravel by-law. The

judgment granting the defendants' motion for summary judgment and denying the plaintiffs' motion on so much of the complaint brought under G. L. c. 249, § 4, is affirmed.

*So ordered.*