Fecteau, Francis R., J.
This is an action brought by the Town of Uxbridge, under the provisions of G.L.c. 40, §21, cl.(17), and c. 40A, §7, that seeks to enforce provisions in its general and zoning by-laws with respect to the excavation and removal of earth materials, such as topsoil and loam; in particular, enforcement is sought for a provision in its general by-laws that excavation be conducted only after an earth removal permit is sought and granted, as well as a prohibition in its zoning by-law against the taking of earth that had been excavated outside the town. Moreover, the town contends that the court is without jurisdiction in this matter as the defendant has not exhausted available administrative remedies. The defendant contends that the application of the by-law provisions in question are unenforceable as to him, on the ground that his excavation, preliminary to installation of a parking area, was either permitted by, consistent with and/or accessory to the normal operation of the locus as a farm or farm stand, or consti *308 tutes landscaping activities. With respect to the ordinance prohibiting the removal of loam from the town, the defendant contends that it exceeds the authority of the town and is an improper restriction on movement of vehicles and commerce on the roads of the Commonwealth, between and among municipalities.[2] Lastly, the defendants contend that the actions of the town against them amount to selective enforcement.
This matter came on for trial before me, sitting without jury, on April 14, 2006. The parties were granted until April 28, 2006, by which they were to file their requests for findings of fact and rulings of law. The matter was taken under advisement at that time.
FINDINGS OF FACT
1. The plaintiff Hector Girouard is the zoning enforcement officer and building inspector for the Town of Uxbridge.
2. The defendant Ruth Vecchione, as trustee of Coopertown Realty Trust, acquired the property in question approximately in 2000. The defendant Gary Vecchione is married to Ruth and is the manager of the property.
3. The property at issue consists of approximately 10.2 acres of land located at 189 Mendon Street (Route 16) in the Town of Uxbridge. It lies within the Agricultural zoning district. At the time it was first acquired by its current owner, it was largely an open field where hay was growing and where corn had once grown. Since its acquisition, some crops have been grown, consisting chiefly of hay, pumpkins and fruit trees. The defendants have also constructed a farm stand on the property consisting of a couple of small shacks and other areas for display of items for sale.[3]
4. In order to further the business of the farm stand, the defendants decided that an area satisfactory for the entry and parking of cars was necessary. The conditions as they existed prior to improvements being made, in an area proximate to the stand and available for customers to drive onto the property for off-road parking of vehicles was then believed to be subject to excessive wetness, including occasional flooding; such wetness caused the topsoil and loam to become muddy and was thereby rendered unsuitable. The defendants decided that the loam and topsoil should be excavated and replaced by gravel.
5. Due to the proximity of the land in question to a vegetative wetland and/or to the occasional flooding to which it was subject, the defendants were apparently required to apply to the local conservation commission for an Order of Conditions in order to allow the intended work to be done, and such an order was obtained on or about September 12, 2000. As a condition to the order, the commission required a plan to be prepared by a land surveyor showing the intended work area. This plan showed an area approximately 283 feet by 60 feet, which is approximately five percent of the total area of the defendants’ property. The order also placed a maximum elevation on the completed operation that restricted its elevation to that prior to the excavation and replacement of earth material. The defendants did not obtain any permits for earth removal nor any other form of approval for the intended excavation from the town.
6. Following approval of the Order of Conditions, excavation began on the property removing to a depth of approximately two to four feet. The earth material thus removed was then stockpiled on the properly. The excavated area was then filled with gravel to an elevation as previously existed and can accommodate approximately 26 cars.
7. In order to facilitate the removal of the earth material excavated, the defendants decided to offer the stockpiled material for sale. They obtained a permit from the building inspector to allow the installation of a sign that advertised that the loam and topsoil was for sale.
8. On October 11, 2000, the Board of Selectmen of the Town of Uxbridge delivered to the defendants a cease and desist order, citing Section X of the General Bylaws of the town, the earth removal by-law which prohibited earth removal without a permit.
9. The General Bylaws of the town, as revised in 1957, include an earth removal by-law that states, in relevant part, as follows:
The removal of. . . loam.. . from any parcel of land ... is prohibited unless a written permit therefor is obtained from the Board of Selectmen as hereinafter provided, except, however, that no permit shall be necessaiy when . . . loam . . . must be removed to construct a building being built in accordance with a permit issued by the proper Town authority, to construct a public or private road within the Town, to operate a licensed landfill, or as part of the normal operation of a farm, garden, cemetery or landscaping activity.
[Ex. 1, Section X.)
10. The Building Inspector also delivered to the defendants a cease and desist order under Section VII(f) (2) of the zoning bylaws. The particular provisions of the Zoning By-laws of the town that govern the agricultural district, Section VII(F), includes the following, in relevant part:
2. In an agricultural district, the Building Inspector shall issue, after holding a public hearing, a permit for the removal of... loam. .. but said permit shall require as a condition that no loam shall be removed from the Town, and that after completion of the operations, the land shall be left in a condition no less valuable for development... Nothing herein contained, however shall prohibit the removal . . . loam in connection with the construction of a building for which a permit has been duly issued, or for the landscaping of a lot from which said . . . loam is removed, providing that the Building Inspector *309 has been informed of the changes to be made, together with an accurate description of the parcel of land under consideration and further provided that no loam shall be removed from the Town.
[Ex. 2.]
11. This section of the zoning by-laws, appearing to have been originally adopted by the town in 1966 and approved by the Attorney General in 1967, also includes the following permitted “uses of land, buildings and structures: . . . Farming, truck gardening, nurseries, greenhouses, and all agricultural and horticultural uses, including farm structures,” at Section VII(F)(3), as well as: “Any use accessory to the foregoing.” [Ex. 2, Section VII(F)( 10).]
13. The defendant Gary Vecchione sold earth material that had been excavated from the properly in question to various parties. He often assisted the purchaser by loading the material onto the vehicles used by the buyers to transport the material away from his property. Once he sold it, and it left his property, he had no knowledge as to its intended destination nor did he seek to control its destination. The defendant does not dispute that some of the material was taken by the purchaser out of the town and that he did nothing to restrict, control or limit the purchasers in their intended final destinations for this material. The defendant had attempted to secure some locations within the town to which the materials could be transferred but was not successful in making such arrangements.
14. Following their receipt of the cease and desist orders, the defendants did not claim any appeal to the Zoning Board of Appeals of the town nor any other body. Following receipt of the cease and desist orders he continued to excavate, stockpile and sell the earth material. The town filed suit on October 25, 2000, and obtained a preliminary injunction against the defendant that prohibited further violation of the town bylaws.
RULINGS OF LAW
The town contends that the two by-law provisions in question are lawful and that the defendants’ actions in contravention of them are not. There does not appear to be any claim by the town, however, that the defendants’ use of their land as a farm stand is improper. Therefore, the issues involved appear to be limited to the manner in which the defendants prepared for and constructed the parking area attending the farm stand, in failing to obtain an earth removal permit and in allowing the earth to be taken outside the confines of the town; moreover, the trial was conducted as if these were the only issues in contest. These issues also appear to include procedural questions related to whether the defendant has the right, at this stage of proceedings, to claim that he is exempt from either by-law, by his failure to apply to the respective boards in question, opportunities at which he would have been allowed to show that his intended course of conduct did not come within the purview of the by-laws, i.e., were exempt from permit requirements. Resolution of this case, then, will require discussion of the claim by the town that the defendants are barred from challenging the validity of these bylaws and the enforcement orders entered thereon on the ground of a failure to exhaust administrative remedies.
“Municipalities may regulate earth removal through their zoning ordinances or by-laws. See Glacier Sand & Stone Co. v. Board of Appeals of Westwood, 362 Mass. 239, 242 (1972). Since 1949, municipalities have also had the option of regulating earth removal through a general by-law or ordinance. See G.L.c. 40, §21(17), inserted by St. 1949, c. 98, and most recently amended by St. 1973, c. 317. See generally Byrne v. Middleborough, 364 Mass. 331, 333-34 (1973); Beard v. Salisbury, 378 Mass. 435, 438-39 (1979). These two modes of regulation need not be mutually exclusive. Thus, a zoning by-law may confine earth removal to specified zoning districts, while a separate earth removal by-law may govern how earth removal is carried out within those districts.” Toda v. Board of Appeals of Manchester, 18 Mass.App.Ct. 317 (1984). Thus it is in the case at bar, the plaintiff town having chosen to enact earth removal regulations in its general by-laws and its prohibition against removal from the town in its zoning by-laws.
In McIntyre v. Board of Selectmen of Ashby, 31 Mass.App.Ct. 735 (1992), a case similar to that at bar involving a town having enacted earth removal provisions in both general and zoning by-laws. The plaintiffs/property owners had brought an action in the Superior Court seeking a declaration that, where the board had granted them a special permit, the selectmen were without authority to deny their application; alternatively, the plaintiffs sought review of the selectmen’s decision, under G.L.c. 249, §4, and an order compelling them to issue the required permit. The Appeals Court affirmed the action of the trial court in denying relief to the property owner, finding that the two provisions were not mutually exclusive and that they served differing purposes and interests.
The first of the by-laws at issue to be discussed, that appearing within the town’s general bylaws, prohibits the removal of earth materials without a permit; the by-law then provides for a licensing scheme for the issuance of earth removal permits that establishes the Board of Selectmen as the licensing authority. Towns have been given the authority “for the purposes hereinafter named [to] make such ordinances and bylaws, not repugnant to law, as they may judge most conducive to their welfare, which shall be binding upon all inhabitants thereof and all persons within their limits . . .” G.L.c. 40, §21. Among such purposes for which bylaws may provide is “for prohibiting or regulating the removal of soil, loam or gravel from land not in *310 public use in the whole or in specified districts of the town, ... The superior court shall have jurisdiction in equity to compel compliance with any ordinance or by-law made hereunder. Any order or by-law prohibiting such removal hereunder shall not apply to any soil, loam, sand or gravel which is the subject of a permit or license issued under the authority of the town or by the appropriate licensing board of such town or by the board of appeal, or which is to be removed in compliance with the requirements of a subdivision plan approved by the town planning board.” G.L.c. 40, §21 (cl. 17).
While the enabling statute sets out an enforcement scheme, including a penalty framework, and the bylaws of the town set penalty provisions for violation of the by-law, neither provide for an appeal mechanism from either the denial of a license nor from any orders of the Board of Selectmen. Moreover, the town does not cite any provision of law that would allow for further administrative review of any decisions or orders of the selectboard, and that there is support for the position that the only review of such a decision is by a complaint in certiorari. See McIntyre v. Board of Selectmen of Ashby, 31 Mass.App.Ct. 735 (1992). Thus, while there remains a question whether the defendants can be charged with having failed to exhaust administrative remedies from the cease and desist order given by the selectmen from their failure to apply for an earth removal permit, giving the board of selectmen an opportunity to determine whether the defendant’s intended activity comes within a recognized exemption, a discussion of the exemptions permitted, namely, whether the earth removal was accessory to the “normal operation of a farm,” or comes within the generally accepted meaning of “landscaping activity,” may be helpful at this point in the analysis.
Notwithstanding the apparent lawfulness of their farm stand, the defendants cannot realistically contend that the earth removal activity that was conducted was related to “normal operations of a farm” on their land, as it was described by the defendant as an open hay field when they purchased it and it now supports the activity of a farm or nursery stand, engaged in the selling of products which the defendant conceded are primarily grown on the land of others. The by-laws do not define the terms “farm,” “farm operations,” or “agriculture.” Webster’s Ninth New Collegiate Dictionary defines a “farm” as a “tract of land devoted to agricultural purposes including the raising of animals, especially domestic animals.” “Agriculture” is defined therein as “the science or art of cultivating the soil, producing crops and raising livestock and in varying degrees the preparation of these products for man’s use and their disposal (as by marketing).” G.L.c. 128, §1A, states, in relevant part: “ ‘[F]arming’ or ‘agriculture’ shall include farming in all of its branches and the cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural, floricultural or horticultural commodities, the growing and harvesting of forest products upon forest land, the raising of livestock including horses, ...”
In two cases, the appellate courts of this state had occasion to examine applications for earth removal permits in relation to farming activity, finding that the earth removal was not incidental to an agricultural use. First, in the case of Henry v. Board of Appeals of Dunstable, 418 Mass. 841 (1994), the court reversed a decision by a Superior Court judge who had determined that the property owner’s proposed regrading of land which included the excavation of a substantial quantity of earth material for use as a Christmas tree farm was exempt from regulation by the Dunstable zoning by-law, under the provisions of G.L.c. 40A, §3, as incidental to an agricultural use. Likewise in Old Colony Council-Boy Scouts of Am. v. Zoning Bd. of Appeals of Plymouth, 31 Mass.App.Ct. 46 (1991), the Appeals Court denied relief to an applicant that had been denied an earth removal permit for an excavation to create a cranberry bog, a decision that was cited with approval in Henry, supra. More importantly, however, in both of said cases, the property owner applied for the permitbefore the issuing authority, and upon rejection, applied to the court for relief. Here, the defendants did not apply, but rather acted without permission, to the point where the town sought enforcement by the court which was granted, preliminarily-
In another case that involved a property owner’s claim that a retail premises engaged in the selling of nursery stock grown off-site was “agriculture,” and for which support was sought in a number of cited cases, the court distinguished those cases from that at issue therein:
In each instance, the raising or propagation of plant or animal life was a central and primary component of any activity deemed by the court to constitute agriculture, horticulture, floriculture, or viticulture. At best, the rationale of those cases might suggest that activities that are only ancillary or incidental to the raising or propagation of plant or animal life on the premises would themselves be deemed to come within the definition of agriculture, horticulture, floriculture or viticulture, see Needham v. Winslow Nurseries, Inc., 330 Mass. 95, 100-01 (1953), but we are aware of no case that suggests that the business of selling trees and bushes, planted and nurtured elsewhere and delivered to the business premises ready for marketing, as here, qualifies for exemption under G.L.c. 40A, §3. Indeed, the common understanding of the words “agriculture” and “horticulture” is otherwise.
Building Inspector of Peabody v. Northeast Nursery, Inc., 418 Mass. 401 (1994). Likewise here, the defendants’ use of this land is not primarily devoted to the cultivation, tilling or harvesting nor in the *311 creation or production of any other living things, but rather their use of the locus is chiefly in the retailing of products created or grown elsewhere; thus, the construction of a parking lot ancillary thereto that requires the removal of earth materials is not accessory nor incidental to the “normal operations of a farm.”
Nor can the excavation of an area of land of the dimension and depth that the defendant has done be reasonably viewed as landscaping. While here again the by-law does not define “landscaping activities,” the term “landscape” means “to modify or ornament (a natural landscape) by altering the plant cover.” Webster’s Ninth New Collegiate Dictionary. What the defendant has done cannot realistically be viewed as “landscaping,” since what he has done is simply to have substituted one earthen material (gravel) for another (loam and topsoil), without changing the grade, elevation or vegetation, in order to facilitate the operation and parking of motor vehicles.
Lastly, the defendants complain that the town’s enforcement efforts as against them are improperly selective. To support this claim, the defendants point to two other examples of construction wherein the town did not require an earth removal permit, one involving the construction of an ice cream stand and a larger parking lot than that of the defendants. The other example is of an approved subdivision, which is exempted as a matter of statutory law. While the defendant claims that it is within the same zoning district as their land, no other evidence was introduced as to whether it was made a part of a more comprehensive permit application, nor whether any parking lot construction involved the excavation of earth materials. That the town seeks to enforce regulatory laws against one party and appears not to have done so against another does not satisfy the burden upon a party to prove selective enforcement of the laws
Consequently, for the foregoing reasons, the plaintiff has amply demonstrated that the defendants have failed to obtain a necessary permit for the removal of earth materials, contrary to its general by-law; it is, therefore, entitled to relief, the defendants having failed to demonstrate that their activities are exempt.
With respect to the provision of the zoning by-law that prohibits removal of loam from the confines of the town, it is clear that the defendants did not claim any appeal to the town’s zoning board of appeal from the cease and desist order issued by the zoning enforcement officer. The town contends, therefore, that the court lacks jurisdiction to consider the claim by the defendants that the zoning by-law is valid and/or that it may validly be enforced against them.
There is a difference between a body of general by-laws and a set of zoning by-laws, since the latter is governed by the procedure set out in G.L.c. 40A, the Zoning Enabling Statute, which allows for orders of enforcement from the zoning administrator to be appealed to the local Zoning Board of Appeals. Under G.L.c. 40A, §8, an appeal may be taken “to the permit granting authority as the zoning ordinance or by-law may provide, ... by any person . . . aggrieved by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of this chapter or any ordinance or by-law adopted thereunder.” In the case at bar, the zoning enforcement officer issued a cease and desist order to the defendants, thereby making them aggrieved persons. As such, they had a right as well as a duty, in the ordinary case, to appeal this order to the zoning board of appeals, which they did not do.
There is support for the position taken by the plaintiffs that the lack of an administrative appeal deprives the defendant of standing to contest the validity of the zoning by-law at issue. See Cumberland Farms, Inc. v. Zoning Board of Appeals of Walpole, 61 Mass.App.Ct. 124, 129 (2004), and Bonfatti v. Zoning Board of Appeals of Holliston, 48 Mass.App.Ct. 46, 49-50 (1999). There, the property owner:
Bonfatti chose not to appeal the condition attached by the planning board, and instead sought a building permit. When the building inspector denied the permit, at least four grounds for that denial were provided. Bonfatti chose to appeal the building inspector’s denial on only one of those grounds: the lack of sufficient continuous frontage . . . The symmetry of issues between the decision of the planning board and that of the building inspector leads this court to the conclusion that “[h] owe ver the plaintiff characterizes them, his contentions to the [zoning board], to the motion judge, and to this court are in essence that the . . . condition [that lot 1 could not be a building lot] was invalid when originally imposed [by the planning board].” . . . Bonfatti has attempted to avoid the statutorily established avenue for review by asking the building inspector to overrule the planning board’s prior decision . . . “Having failed to take a timely appeal from the [planning] board’s action in granting the special permit with conditions, . . . the plaintiff did not have the right to challenge the validity of . . . the condition] ] in a proceeding which, regardless of its form, was the equivalent of an appeal.”
[Internal quotations to Klein v. Planning Bd of Wrentham, 31 Mass.App.Ct. at 778.] Moreover, as was stated in the case of Quincy v. Planning Board of Tewksbury, 39 Mass.App.Ct. 17 (1995):
The statutorily required submission of zoning disputes to local authority is so central to the architecture of G.L.c. 40A that we have required the exhaustion of administrative remedies as a prerequisite to judicial review. See William C. Bearce Corp. v. Building Inspector of Brockton, 11 Mass.App.Ct. 930, 931 (1981); McDonald’s Corp. v. Seekonk, 12 Mass.App.Ct. 351, 353 (1981). Within the zoning context, therefore, principles of exhaustion require *312 that a person aggrieved by the action of a local zoning administrator (the building inspector in most municipalities) must first attempt to redress the grievance through the local board of appeals before seeking judicial review. See G.L.c. 40A, §§8, 13, 14, and 17; Neuhaus v. Building Inspector of Marlborough, 11 Mass.App.Ct. 230 (1981). See also G.L.c. 40A, §7, as inserted by St. 1975, c. 808, §3 (“[n]o action, suit or proceeding shall be maintained in any court . . . except in accordance with the provisions of this section, section eight and section seventeen . . .”).
Thus, a defendants’ failure to take an appeal to the Zoning Board of Appeals from the cease and desist order of the building inspector would amount, in the ordinary case, as a waiver of any right to claim that the by-law is invalid and/or that their conduct comes within an exception to the permit requirements.
However, there are exceptions to this general rule regarding zoning by-laws. As was discussed in the case of Balcam v. Hingham, 41 Mass.App.Ct. 260 (1996), the court recognized at page 267, that there are sometimes:
extraordinary circumstances, as when the administrative remedy is inadequate (e.g., the administrative board does not have jurisdiction to hear the [properly owner’s] complaint), or the issues in the case are of such public significance that the outcome will affect numerous persons in addition to the [properly owner], or where there is no dispute about the facts, and the issue involves merely a question of law . . . Nor do the [property owner’s] claims fall within the narrow range of cases involving the “validity and. extent” of zoning by-laws, where, in the event of a live controversy (admittedly present in the instant case), direct recourse to the courts is available either through c. 231A (Superior Court) or, even without a live controversy, . . . ; c. 240 §14A, and G.L.c. 185, §1(j1/2) (Land Court), without the need first to appeal to the zoning board of appeals.
[Internal citations omitted.] This case presents such an exception.
The case relied upon by the defendants, Beard v. Town of Salisbury, 378 Mass. 435 (1976), provides support for their claim that such a prohibition of earth removal from the town is in excess of municipal authority, irrespective of whether the by-law was within its general by-laws or its zoning by-laws. In that case, the restriction was by means of a general by-law, and in a suit for declaratory judgment brought by the parly against whom enforcement was sought, the by-law was held to be invalid and, given the language of the decision, it does not appear that the court was restrictive in its view, limiting the effect of its decision to general by-laws. Indeed, the court said, at page 441:
[w]e do not believe that the Legislature intended that the statute empowering local earth removal regulations was ever to be used in such a manner as to inhibit intermunicipal traffic — even, as in this case, where the impact on traffic may be characterized as an incidental effect of an otherwise proper purpose ... Authority for a regulation of this nature is similarly absent from the Home Rule Amendment. Although the Home Rule Amendment confers broad powers on municipal governments, ... it does not appear to be so expansive as to permit local ordinances or by-laws that, as here, regulate areas outside a municipality’s geographical limits . . . Moreover, as a general matter, the authority to regulate traffic on the ways of the Commonwealth is a power vested in the General Court. . . Although regulatory authority on this subject may be delegated by the Legislature, it is inconsistent with the present statutory scheme for a town to assume this power on its own.
Therefore, the defendant is entitled to relief from the zoning by-law that prohibits removal of loam from the confines of the town. They are entitled to a judgment that declares that the by-law in question is invalid, being in excess of the municipal authority.
ORDER FOR JUDGMENT
For the foregoing reasons, a judgment shall enter in favor of the plaintiff with respect to count I. A permanent injunction shall enter that orders the defendant to comply with the provisions of Section X of the General By-Laws of the Town of Uxbridge and which prohibits the resumption of earth removal activity without applying for and obtaining a permit to do so from the issuing authority.
Furthermore, a judgment shall enter in favor of the defendants on count II, and said count is ordered dismissed and any injunctions entered in enforcement thereof are vacated.
Furthermore, a judgment shall enter on the counterclaim, in favor of the counterclaim plaintiffs, that declares that so much of the by-laws of the Town of Uxbridge that prohibits the removal of loam from the town is invalid and the Town of Uxbridge, its agents and employees are hereby enjoined from the enforcement thereof.

 With respect to this latter prohibition that appears in the zoning by-law and to which is referenced in the general by-law, the defendants have filed a counterclaim seeking declaratory and injunctive relief against the validity and operation of the by-laws’ prohibition of removal of loam from the confines of the town.

 The defendant Gary Vecchione testified that two shacks were constmcted that did not require building permits given their limited floor area, but that electrical and plumbing permits had been obtained, as well as permits to run a farm stand and for the sale of goods.